RICE v. H. P. CUMMINGS CONST. CO. (No. 309/142.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. MASTER AND SERVANT ⊚⟿107—INJURY TO SERVANT—SAFE PLACE TO WORK —SCAFFOLD—LABOR LAW.

Under Labor Law (Consol. Laws, c. 31) § 18, requiring scaffolds for employés to be safe and to have a railing, where the scaffold was in process of being torn down by deceased, his master was not liable for the servant's death by a fall therefrom because of not having the floor nailed and a railing around it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. ⊚⟿107.]

2. APPEAL AND ERROR ⊚⟿1001—QUESTIONS OF FACT—WEIGHT OF EVIDENCE.

Where there is sufficient evidence to support the finding of the jury, it will not be disturbed on appeal, though to the appellate court the preponderance seems the other way.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. ⊚⟿1001.]

3. APPEAL AND ERROR ⊚⟿1006—VERDICT—CONCLUSIVENESS.

Where, on conflicting evidence, the plaintiff had recovered before three successive juries, and the first two verdicts had been set aside as against the weight of the evidence, the third verdict should not be set aside on that ground alone.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3951–3954; Dec. Dig. ⊚⟿1006.]

Kellogg and Lyon, JJ., dissenting.

Appeal from Trial Term, Warren County.

Action for wrongful death by Nettie S. Rice, administratrix of Bird L. Rice, deceased, against the H. P. Cummings Construction Company. Judgment for plaintiff for $5,820.88. Defendant appeals. Affirmed.

See, also, 164 App. Div. 376, 149 N. Y. Supp. 759.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Ainsworth, Carlisle & Sullivan, of Albany (Charles B. Sullivan, of Albany, of counsel), for appellant.

C. E. Fitzgerald, of Glens Falls (James McPhillips, of Glens Falls, of counsel), for respondent.

HOWARD, J. The plaintiff was killed while engaged in the erection of a concrete dam across the Hudson river at Corinth, N. Y. In the prosecution of the work in question a wide, substantial trestle, like a highway bridge, had been built across the Hudson at this place, from which concrete was poured to create the dam. Upstream from the main thoroughfare, so to speak, was built a temporary platform over each arch to be poured. Very soon after an arch was poured, this temporary platform in each instance was removed. The deceased was a carpenter engaged generally in constructing and demolishing platforms and in doing other carpenter work. He was at work at the time of the accident on the little platform which had been built over

arch No. 4. These arches were numbered from the Luzerne side; that is, from west to east. The plaintiff contends that the deceased, while standing on this little platform and engaged in nailing a brace from an electric light standard to the edge of the little platform, pitched over towards the Corinth shore and was precipitated to the river bed, something over 40 feet below. His death resulted from the injury.

[1] The plaintiff seeks to recover under section 18 of the Labor Law, which concerns scaffolds. She contends that the structure was unsafe, in that the planks which constituted the floor were not nailed down, and also because there was no railing around the platform. The defendant's contention is that the little platform in question had served its purpose and was actually in the process of being torn down by the deceased and other persons at the time of the accident. If this contention be a fact, the plaintiff cannot recover, because manifestly an employer cannot maintain a railing around a platform at the very instant when it is being torn away, or have the floor planks nailed down at the instant when they are being torn up. But the plaintiff contends that no such condition obtained in the case before us.

These small platforms, built out from the main platform, were constructed in two sections, and in the case of the little platform in question the outermost section, the one farthest from the main trestle, had concededly been removed. The defendant contends that the deceased at the time of the accident was actually engaged in tearing down the remaining section; whereas the plaintiff contends that the remaining section had been left for a purpose and for subsequent use, and was, therefore, yet a scaffold within the meaning of section 18 of the Labor Law. Upon the determination of this issue of fact, this case hinges.

[2] The defendant vigorously contends that, after the pouring of each arch was finished, the little platform, having served its complete purpose, was very soon thereafter torn down in each instance; the material being used in constructing a platform over the next arch. The plaintiff, however, contends that the platforms were frequently used after the pouring for the purpose of hauling up lumber from the demolished forms of the arches below; and it is contended that the section of the platform in question was thus left undisturbed for that very purpose. It must be conceded that the defendant offered a greater number of witnesses to support its contention than was offered by the plaintiff in support of her position. However, as to the probabilities which may be invoked in support of either contention, it cannot be said that it is unreasonable to assume that the plaintiff's contention is sound. While the greater weight of evidence, as we view the case, was on the side of the defendant on this point, there was no such overwhelming weight, as the case comes to us now, as to justify us in upsetting the determination of the jury.

If the first section of the platform over arch No. 4 was left intact for the purpose of enabling the workmen more conveniently to haul the lumber up from the demolished form of the arch below, the structure must be held to be a scaffold within the meaning of the section 18 of the Labor Law. The jury, apparently, has found that a part of the platform was left for that purpose, and it has further found

that the platform was unsafe; but the defendant contends that, even so, the deceased had no occasion to be on the platform, and that it is absurd to contend that he was bracing an electric light standard to this temporary platform soon to be demolished. The jury has not taken this view of it, and we are not persuaded that they should have taken any such view. In temporary structures, like the one in question, it is entirely possible that one of the electric light standards might have become loosened and liable to tip over, and that as a temporary expedient it was being braced by the deceased, while in the line of his duties, in the manner claimed by the plaintiff.

[3] The case has been tried three times, and has been here once before. The plaintiff succeeded at the first trial, and this court reversed; Judge Woodward writing. 164 App. Div. 376, 149 N. Y. Supp. 759. On the second trial, again the plaintiff succeeded, obtaining a verdict of $6,000, which the trial justice set aside. On the third trial another jury found with the plaintiff, awarding her $5,000. Thus 36 jurors have passed upon the issues at stake, deciding always with the plaintiff. Three juries have given us the benefit of their opinion on the questions of fact involved in this case. Courts differ in their attitude towards three successive verdicts on the same side of the case. In Meinrenken v. N. Y. C. & H. R. R. R. Co., 103 App. Div. 319, 92 N. Y. Supp. 1015, Judge McLaughlin, sitting in the First department, expressed himself very emphatically on the subject, asserting that:

"This judgment is based upon a verdict which, in the opinion of this court, the jury had no right to render, and it has so declared on the two previous appeals. The jury having no right to render the verdict, the judgment entered thereon is wrong, and to permit it to stand is, by judicial decree, to compel one person to give property to another. This the court has no more right to do than the jury had to render its verdict, and to do so would be wrong, and the two wrongs would not make a right. It matters not, therefore, how many times a jury may render a verdict upon this evidence. A judgment based thereon cannot be permitted to stand, if the court discharges its duty."

But Judge Woodward, sitting in the Second department, with great vigor announced a contrary doctrine. In Ridgely v. Taylor & Co., 126 App. Div. 303, 110 N. Y. Supp. 665, he said:

"There is a place somewhere, where the spirit of the constitutional guaranty requires that the verdict of the jury shall be final; and where there has been a sufficient number of trials, under fair conditions, so that it cannot be presumed that the jury has been under the control of passion, corruption, or other improper motives, or has failed to give to the evidence proper consideration, it is the duty of the court to give effect to the verdict and to end the litigation. * * * Three juries, none of which are shown to have been governed by any improper motives, except as this may be gathered from the verdicts rendered, have believed the plaintiff's version, which is not so highly improbable, when all of the circumstances are taken into view; and to permit this verdict to be set aside because we, looking at the record, may think a different result should have been reached, is to nullify the Constitution in its spirit, and to needlessly prolong a litigation."

In our own department Judge Landon, speaking for the court, wrote as follows:

"I think that the verdict is against the weight of evidence. The question is: Shall we again set aside the verdict? * * * As the jury are the final

arbiters of the facts, the court must, after affording them reasonable opportunity to compare their own opinions of the facts with those held by the appellate court, finally accept the judgment of the jury. It must be, as was once remarked by a learned judge, that 'the correctness of judicial opinions on mere questions of fact may well be distrusted, when we find them confessedly opposed to the common sense of mankind.' "

Thus it will be seen that three of the departments of the Appellate Division of the Supreme Court in this state have announced the policy which they think should be pursued by the courts of review in the event of the verdict of three separate concurring juries. Personally I am inclined strongly to the policy which requires the courts to bow to the opinion of so many citizens of the state, impaneled as jurors, sitting in a court of justice, performing their duties under the solemnity of an oath. I attach great weight to the common sense of the common people; and I believe that men who are unhampered by knowledge of the technical requirements of law are, in many instances, more apt to meet out even-handed justice than judges, whose professional training forces them to be guided by rules and precedent, rather than by conscience and judgment. If "trial by jury" is to be a reality, instead of a formality, the verdict before us must be upheld. I quote again from Judge Woodward's opinion in the Ridgely Case, supra:

"Section 2 of article 1 of the state Constitution provides that the 'trial by jury in all cases in which it has been heretofore used shall remain inviolate forever'; language which could hardly be made stronger, and yet, if verdicts founded on sufficient evidence may be continually set aside because the trial justice, or those who pass in review upon the record, happen to differ with the jury as to the weight of evidence, the guaranty is hardly worth preserving in civil actions."

This reasoning is strong and sound, and applies exactly to this case. For this court to fling defiance at this third verdict, and heap up the expenses of this litigation, and foster the much-criticized "law's delay," would tend to shake public confidence in the wisdom of the judiciary of this state.

The judgment should be affirmed, with costs.

SMITH, P. J., and WOODWARD, J., concur. KELLOGG and LYON, JJ., dissent.