HERMAN RAKOV, Appellant, *v.* BANKERS LIFE INSURANCE COMPANY OF THE CITY OF NEW YORK, Respondent.

*Insurance — misrepresentation in application — appeal — successive verdicts for plaintiff — weight.*

Appeal from an order, entered in Onondaga county clerk's office February 8, 1916, granting defendant's motion for a direction of a verdict upon the issues herein and dismissing the complaint, and also from a judgment entered on the same day upon such order.

Order and judgment affirmed, with costs, on the opinion of Smith, P. J., in *Rakov* v. *Bankers Life Ins. Co.* (164 App. Div. 645). All concurred, except Howard, J., who dissented in opinion, in which Woodward, J., concurred. Kellogg, P. J., and Lyon, J., also voted to reverse the findings of fact on the ground that they were against the weight of the evidence, upon the opinion of Kellogg, J., upon the former appeal.

HOWARD, J. (dissenting): I dissent and feel that I ought to state my position. On March 27, 1911, Rachel Rakov made application to the defendant company herein for life insurance. On May 12, 1911, the company wrote a policy on her life for the sum of $2,000 payable to her son, Herman Rakov, beneficiary, the plaintiff herein. May 12, 1912, exactly one year from the date of the policy, she died. The company refused to pay the amount for which she was insured and this suit is brought on the policy. The defendant refuses payment because of two alleged untruthful representations made by the insured in her application for the policy. These alleged misrepresentations were answers to questions put to her. The first question is: "Have you ever applied to any company, society or agent for life, accident or health insurance without receiving a policy of the exact kind, amount and at premium applied for?" The second question is: "Has any medical examiner given an unfavorable opinion of your physical condition with reference to life insurance?" To each of these questions the insured answered, "No." As a matter of fact four previous applications for insurance upon the life of Rachel Rakov, or what purported to be applications, had been made and rejected. The

insured was born in Russia. At the time of her application for the policy in suit she was about fifty-five years of age. She could neither read nor write nor speak the English language. She talked in Yiddish. She could not sign her name either in English or Yiddish but made her mark. She conversed on all occasions with the insurance agents (those who did not speak Yiddish) and with the examining physicians through an interpreter. Before her application for the policy in suit she had taken out and then carried insurance in the Penn Mutual Life. This case has been before this court on a previous appeal. (164 App. Div. 645.) Two opinions were written on the first appeal but a majority of the bench did not concur in either opinion so that the law of the case has not yet been established by this court. This action has been three times tried and three juries have determined in favor of the plaintiff. Three juries have found substantially that the insured did not understand that she had ever made previous applications for insurance in other companies or had ever been rejected. Each of these juries has found, in effect, that the insured was imposed upon by one Joseph, an insurance agent, and by one of the daughters of the insured; that they perpetrated a fraud upon the insured and kept her in utter ignorance of the nature of the medical examinations which were being made and of the application papers which they were causing her to sign. The plaintiff contends that these persons falsely represented to the insured that the examinations were being made and the transactions had by the Penn Mutual Life for the purpose of discovering the condition of Mrs. Rakov's health at that time. A careful examination of the evidence has led me to the conclusion that this court ought not to interfere with the verdict of this third jury so far as it has determined the facts in this case. We have recently announced the attitude of this court towards the verdict of three successive juries arriving at the same conclusion. (*Rice* v. *Cummings Construction Co.*, 169 App. Div. 832.) Unless this court is to stultify itself, proclaiming a principle one day and repudiating it the next, it must abide by the verdict of the jury in this case. Sometimes the verdicts of juries amaze the appellate courts and are incomprehensible to their minds. But judges who sit in review are prone to forget that juries sit in the presence of witnesses; that they have an opportunity to study the countenance, observe the manner and estimate the individuality of each person who testifies. In arriving at the truth of the case the trial juror has surpassing advantages over the appellate judge. In many instances words, transplanted into print, portray only feebly the impression conveyed by the witness; for the speech of an upright citizen looks no more fair on paper than the words of the perjurer and thief. Therefore, the policy of the law has wisely left the final determination of most questions of fact to the arbitrament of juries; where twelve common citizens sit in the atmosphere of the trial and weigh, not only the words but the character, of the witnesses. I assent to the doctrine pronounced by Presiding Justice Smith, when this case was here before, to the effect that a misrepresentation of a material fact vitiates the policy whether made knowingly or not. But, assuming this to be the rule, it then becomes necessary for us to determine, *as a matter of law*, whether there were any misrepre-

sentations in the application for this insurance policy. In determining this question I am adopting the jury's solution of the facts. In the manner that the case was submitted, and under the charge of the trial judge, the verdict shows that the jury must have found that the insured was unaware that she had ever previously made application for insurance; unaware that she had ever previously been rejected; unaware that she had ever been examined by doctors for that purpose. The jury must have concluded that Rachel Rakov was utterly unconscious that she had signed papers purporting to be applications for insurance or that she ever intended to make such applications. Taking these findings of fact as a basis for our reasoning, can it be said, as a matter of law, that the insured had ever made application for insurance or had ever been rejected? I think not. The paper prepared in each instance by the insurance agent Joseph, at the instigation of the daughter Wolson, and which in form was an application for insurance, was not, in fact, Mrs. Rakov's application. Mrs. Rakov was not addressing any communication whatever to the company; she was not attempting to enter into contractual relations of any nature with the company; she was not asking them to insure her; she was attempting to have no transactions with them. The paper was not her application; if it was anything it was Joseph's application. It is, beyond question, impossible for a person to enter into a contract, or attempt to enter into a contract, with another person or corporation without knowing it. A contract cannot be made unless the minds of the parties meet, and their minds cannot meet when one of the parties has no mind on the subject, knows nothing about it, is wholly unaware even of the existence of the other party. Suppose the application had been completely a forgery; concededly so. Suppose Joseph and the daughters had never gone into the presence of Mrs. Rakov at all or talked with her about the matter at any time. Suppose she had never touched the pencil which made the mark purporting to be her signature. Suppose the alleged application had been wholly concocted and prepared in a distant city. In such a case could it be said as a matter of law that Mrs. Rakov had made an application and that her application had been rejected? Surely not. If designing persons have sent spurious documents to various insurance companies, which documents were considered genuine by the companies, and on which they have acted, this in no manner affects the insured in this policy. She had not made application; she had not been rejected. Therefore, her answers were truthful. The supposed application was a 'nullity; its rejection was meaningless. The supposed rejection related in no manner to Mrs. Rakov, for the application emanated in nowise from her. She had not made application for insurance; nobody had made application. The conspirators had imposed a forgery and a fraud upon the companies. The companies were deceived and went through the form, in each instance, of rejecting what they supposed to be an application. But it was not an application. So far as Mrs. Rakov went it was wholly a fabrication and a nonentity. It has been repeatedly held in will cases, and it is the law of the State, that a paper purporting to

be a will executed by an aged, infirm and incompetent person through the connivance and influence of designing individuals, is not the will of the alleged testator, is not his act or declaration, but the will and act of those who exercised the undue influence and domination over him. And in such cases, even though the signature be his genuine signature, signed by his own hand, if the circumstances surrounding the signing of the paper are such as to convince the court that the paper is not his free act and declaration, but the act of those whose influence induced him to sign it, the courts will reject the document as fraudulent and spurious. The fact that the insured in the matter before us went through the mechanical operation of making her mark on the application infuses no validity into the paper. It must have been done understandingly; she must have known what the paper was that she was signing; its character, its effect, its entire import; otherwise the act of making her mark was an empty ceremony and wholly meaningless. Can it be held that the contract of the insured with this defendant is vitiated and destroyed and rendered void because schemers and conspirators have presented forgeries and impositions to other insurance companies on other occasions purporting to emanate from this insured — papers wholly invalid, wholly fictitious, wholly unknown and foreign to the insured ? Surely this cannot be the law. If this were so the most solemn acts of persons, concerning the most important business matters of their lives, could be rendered meaningless and void by the hand of designing persons. There may be room for a difference of opinion as to the facts, but accepting the findings of fact as determined by the jury, it is my conclusion that the several alleged applications by the insured for life insurance in other companies were not, in the eyes of the law, the applications of Rachel Rakov and that the several rejections of these alleged applications were not rejections of applications made by her and the several alleged unfavorable opinions by physicians concerning her physical condition were not made with reference to any life insurance for which she had applied; and that, therefore, she answered truthfully the questions which were put to her at the time she made application for the insurance herein, and that the policy written is sound and that the plaintiff ought to recover. Woodward, J., concurred.