GERTRUDE C. SOLEZ, Appellant, *v.* THE COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION OF AMERICA, Respondent.

Second Department, April 1, 1935.

*Percy A. Shay* [*Frederic R. Coudert, Jr., Walter R. Barry* and *Francis D. Wells* with him on the brief], for the appellant.

*Charles J. Nehrbas* [*Henry C. Moses* with him on the brief], for the respondent.

HAGARTY, J. On the 23d day of January, 1924, the defendant issued an accident insurance policy to one Chester Solez, who died on the 25th day of October, 1929, as the result of a fall. Plaintiff is the widow of the insured and the sole beneficiary denominated in the policy. Defendant writes casualty insurance on the co-operative or assessment plan, pursuant to the provisions of article 6 of the Insurance Law. This action, based on the policy, is to recover the stipulated amount of $10,000. The complaint was dismissed after the jury had rendered a verdict in favor of plaintiff, and this appeal is from the order setting aside the verdict of the jury and dismissing the complaint, and the judgment entered thereon.

This appeal concerns itself solely with a defense of breach of warranty, which, it is claimed, was established as a matter of law. That it was so established the learned trial court held. The substance of that defense is that the insured, in his application, dated the 11th day of January, 1924, warranted that no life, health or accident insurance company or association had ever rejected his application for insurance. It is alleged that that warranty was false in that the insured had been previously rejected by the Mutual Life Insurance Company in 1922, and by the Security Mutual Life Insurance Company in 1923. No proof was offered on the trial as to a third alleged rejection, by the Metropolitan Life Insurance Company, in 1924.

Concerning the transaction between the insured and the Mutual Company, the facts, briefly, are that Solez made application to it on the 8th day of June, 1922, for a $2,000 twenty-payment life insurance policy. Two medical examinations were had, the result of the first of which was not disclosed on the trial, but on the second it appears that the examining doctor advised " postponement for six months." That determination was reviewed by an associate medical director of the company " to see if there would be any change in the decision of declining the risk," and it was marked by him at that time " No change " and he testified on the trial that " the case was declined." Subsequently, the applicant was advised by the broker through whom he had made application that he had been rejected. Thereafter, however, and on the 14th day of May, 1923, the applicant again made application to the Mutual Company for a $5,000 twenty-payment life insurance policy. In that application it appears that, in answer to the questions relating to rejection by any company or association, the deceased answered " None." The examiner on that occasion recommended him " for $5,000 in mod; life 20." Thereupon, a policy was issued by that company to the deceased on the 29th day of May, 1923, which is characterized as a modified or " sub-standard " policy. That policy was in force on the 11th day of January, 1924, when Solez made application to the defendant.

The transaction with respect to the Security Mutual Company grew out of an application made by the insured to that company on the 15th day of May, 1923, for a $5,000 twenty-payment life insurance policy. Another application, which is somewhat confusing, was made by the insured to the Security Mutual Company nine days later, or on the 24th day of May, 1923. As to that application, the deceased noted thereon as follows: " 27. A. When were you last examined for life insurance? May, 1923. B. Give name of Company. Mutual Life — rejected." In passing, it will be observed that this admitted rejection does not concern itself with the alleged rejection by the Mutual Company on the earlier application of June, 1922, but with his application to that company in May, 1923, determination upon which was still pending at the time of his application to Security Mutual Company, and, as aforesaid, instead of rejecting him, the Mutual Company did accept his application and issue a policy on the 29th day of May, 1923. The Security Mutual Company, however, did reject the application or applications made to it, but there is no proof that the deceased was ever advised of that rejection. On the contrary, its agent at the time testified positively that he did not inform Solez of the

rejection and later modified this testimony by saying that he did not remember whether he had told him or not.

Although respondent argues that the disposition of the deceased's application to the Mutual Company in June, 1922, was a rejection of which he had knowledge, and that his warranty to the contrary in the application under consideration was false, in the light of the subsequent relationship between the insured and the Mutual Company there was presented an issue of fact as to the conclusiveness of that disposition as a rejection. In view of the acceptance of the insured's application by the same company within a year thereafter and the issuance of a policy, modified in form, it is true, but for a larger amount, there is substantial ground upon which a jury could find that the original application had been postponed, and eventuated in the issuance of the later policy. Another issue of fact which might well be resolved in favor of plaintiff is that, even though the earlier disposition did amount to a rejection as a matter of law, the insured was led to believe that it was only a postponement, or at least had been revoked by the subsequent favorable action, and hence that he was not guilty of a willful misstatement in warranting to the contrary.

The element of *scienter*, or guilty knowledge, is of prime importance in considering the effect of the undoubted rejection by the Security Mutual Company. The jury could find on the proof that this rejection was never communicated to the insured. While it may be argued that the fact that Solez did not receive a policy from that company operated to bring home to him the realization that he had been rejected, that feature belongs to the realm of fact and does not involve the question of law which we must determine.

That question is whether or not it was incumbent upon the insurer, as a company admittedly authorized to carry on its business upon the co-operative or assessment plan under article 6 of the Insurance Law, to prove knowledge of the rejections in question on the part of the insured so as to establish that he had willfully and fraudulently falsified. In the absence of statutory regulation, respondent's contention that the answer constituted a warranty and that its falsity was the only issue for the jury, even though innocently made, would of necessity be sustained. Over the signature of the deceased is the statement, " I do hereby warrant each of the foregoing answers to be true," and that was his warranty as to the absence of any previous rejections. Under such circumstances, *Baumann* v. *Preferred Accident Ins. Co.* (225 N. Y. 480) would be conclusive. There, as here, the applicant for a policy of accident insurance warranted that no application of his for accident, health or life insurance had ever been declined. That was not true. For reasons which are not material here, it was decided that sections 58 and 107 of the Insurance Law were inapplicable. It was there

held that the falsity of the warranty was fatal to the plaintiff's cause of action.

In the case at bar, however, the provisions of section 210 of the Insurance Law are applicable, and that section, in so far as material, reads:

" § 210. Payment of maximum amount of policy; agreements for benefits; notice of assessment. Every policy or certificate hereafter issued by any corporation doing business under this article, and promising a payment to be made upon a contingency of death, sickness or accident, shall specify the sum of money which it promises to pay upon each contingency insured against, and the number of days after receipt of proof of the happening of such contingency on which such payment shall be made. Upon the occurrence of such contingency, *unless the contract shall have been avoided by fraud*, or by breach of its conditions, the corporation shall be obligated to the beneficiary for such payment at the time and to the maximum amount specified in the policy or certificate."

Concededly, there was no breach of the condition of the policy. The sole ground for the avoidance of the contract, therefore, is that of " fraud," and the question is whether or not, included therein as an essential element, guilty knowledge on the part of the insured must be shown.

In construing this section, the distinction between the character of the respondent as a casualty company, governed by the provisions of article 6 of the Insurance Law, and stock or mutual corporations conducting a casualty insurance business, under the provisions of article 2 of the Insurance Law, as well as between life insurance companies, must be observed. Avoidance of policies issued by such companies is measured by differing standards under the Insurance Law.

Section 58 of the Insurance Law, applying only to life insurance companies, provides that every policy shall contain the entire contract between the parties, " and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties." Materiality is the test of the efficacy of a misrepresentation to avoid a policy under this section, and the trend of authority seems to be that such statements are material except as to manifestly inconsequential matters. (*Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Minsker* v. *John Hancock Mutual Life Ins. Co.*, 254 id. 333; *Anderson* v. *Ætna Life Ins. Co.*, 265 id. 376.)

Section 107 of the Insurance Law deals with life, health and casualty insurance corporations organized under article 2 of the chapter, or, in certain circumstances, foreign corporations; and

subdivision " (f) " thereof provides that " The falsity of any statement in the application for any policy covered by this section shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Unlike the exaction required of life insurance companies, the application in question was not attached to the policy. Other safeguards on behalf of the insured are also provided with respect to policies issued under article 2 of the Insurance Law. Such insurers must conform to the standard provisions required by sections 101 and 107 of the Insurance Law, and as to life insurance the policy is incontestable, save for non-payment of premium, after two years' duration. The Superintendent of Insurance, on the other hand, is the arbiter of the form of policy issued by co-operative companies. Thus, in mode and degree, liability of these classes of insurers differs. The Legislature has seen fit to require a co-operative company to pay the policy issued to its members unless fraud or breach of condition obtains.

If this were a case of first impression, the inclination would be to hold that in testing a breach of warranty by the defense of fraud the Legislature did not intend to include therein the element of *scienter*, in accordance with the general principle enunciated in *American Surety Co.* v. *Patriotic Assurance Co.* (242 N. Y. 54, 64), viz.: " In the former case [where fraud is invoked as a basis for recovery of damages] it is true as stated by the justice that the plaintiff must establish that the alleged misrepresentations were not only false but were known to be so by those making them and that they were made for purposes of deceit. (*Reno* v. *Bull*, 226 N. Y. 546.) That, however, is not the rule in the second class of cases referred to. The defense there set up is in its nature an equitable one and a party who is defending is entitled to succeed under the same rule that would be applicable if he were seeking as plaintiff to procure a rescission of a contract by reason of false representations. In either case all that is necessary to be shown is that the contract being invoked against him was induced by representations which were false and material and upon which reliance was placed in executing the contract. We know of no difference between actions on fire insurance policies and life insurance policies in this respect."

In *Kwiatkowski* v. *Brotherhood of American Yeomen* (243 N. Y. 394) the Court of Appeals refused to uphold an explanation that the insured did not understand the nature of his statement in an application for life insurance. That case, however, did not arise under

article 6 of the Insurance Law, and there was annexed to the certificate of insurance at the time of its delivery, and forming a part thereof, a photostatic copy of the application, and the court pointed out (p. 396) that "The applicant was not deterred by any act of the defendant from learning its contents."

*Rakov* v. *Bankers Life Insurance Co.* (164 App. Div. 645) seems to hold that the word "fraud" as used in section 58 of the Insurance Law does not necessitate a showing of intent to deceive. There, too, the statement in the application as to prior rejections was untrue. In a concurring opinion, SMITH, P. J., held as to section 58 of the Insurance Law: "I do not understand that the Legislature thereby intended to prescribe that a contract made upon misrepresentation of a material fact should still be a valid contract, unless such misrepresentations were fraudulently made. The rule of law that a contract made upon a misrepresentation of a material fact, although innocently made, is not enforcible, rests upon such sound equity that the Legislature will not be presumed to have intended to have abolished the same unless language were used unmistakably indicating such an intent. It seems clear to me that the object intended to be accomplished by this legislation was to protect the policyholder from the rule of law that had theretofore been held that a warranty of an immaterial fact, if untrue, voided the policy."

A new trial was there granted upon other grounds; but, on the reappearance of the case, an affirmance of a dismissal of the complaint on a directed verdict was made on the previous opinion of SMITH, P. J. (176 App. Div. 918), and that, in turn, was affirmed without opinion (225 N. Y. 721). Inasmuch, however, as Judge SMITH's opinion showed that he considered the misrepresentation to be material, the Court of Appeals may have felt that there was no need to distinguish between warranty and misrepresentation as to the element of fraud. But this it did in *E. D. P. Dye Works* v. *Travelers Ins. Co.* (234 N. Y. 441, 449), where HISCOCK, Ch. J., writing for an unanimous court, considers the distinction in proof between a showing of fraud in the making of a warranty and of misrepresentation, under section 58 of the Insurance Law, viz. (pp. 449, 450): "The result of this provision [Sec. 58, Insurance Law] is that in order to produce a warranty in an application for insurance whereof a breach would necessarily and *ipso facto* avoid the policy, the statement claimed to constitute or have the effect of a warranty must be characterized by and *include the element of fraud, and which ordinarily would be established by proof that the person making it knew that the statement was false, and wherefrom could be inferred an intent to deceive and cheat.* A misstatement, even

though stated in the form of a warranty, if made in good faith and without this element of fraud passed into the same class as an ordinary representation and became a defense to the policy only if it was material. On the other hand, the effect of a misrepresentation was left unchanged by the statute. If material it constituted a defense although made innocently and without any feature of fraud; it was sufficient that it was material as an inducement for the issue of the policy, and was untrue." In thus distinguishing the word " fraud " from " misrepresentation," as used in the Insurance Law, the Court of Appeals has squarely held that it ordinarily includes as an element guilty knowledge of the falsity of the statement at the time it was made. There is nothing in section 210 of the Insurance Law from which it can be said that the Legislature did not intend that the word " fraud " therein be given its ordinary acceptation. To establish its defense of fraud, therefore, it was necessary for the respondent to assume the burden of showing such guilty knowledge, and it cannot be said, on the present record, that that was established as a matter of law. The defense as pleaded contains an appropriate allegation to the effect that Solez knew the answers so given by him were untrue and that he gave them with intent to deceive.

The issues, in the light of the foregoing views, were not presented to the jury with a clarity which would warrant reinstatement of the verdict. The order and judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

LAZANSKY, P. J., YOUNG, CARSWELL and TOMPKINS, JJ., concur.

Order and judgment reversed on the law and a new trial granted, with costs to appellant to abide the event.