OPINION OF THE COURT
Edwin Margolis, J.
The principal question presented by this motion is whether section 240 of the Labor Law, which by its express terms applies to situations in which a worker is injured while using a scaffold to perform work on a building or structure, also *511 applies to situations in which a worker is injured in the process of constructing or dismantling a scaffold so used. The relevant portion of section 240 (the first para of sub [1]) reads as follows: "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
The underlying claim is for personal injuries sustained by claimant Joey Alderman[1] when, as an employee of Beltrone Construction Co., Inc., he was working on a construction project at Comstock Correctional Facility. Claimant was directed to climb up on certain scaffolding to assist in dismantling it.
The scaffold had been erected adjacent to the wall of a new building which was being constructed for the State. In an examination before trial and in an affidavit submitted in support of this motion, claimant described the procedure employed in dismantling the structure. He and other workers went to the top level of the scaffold’s plank and tubular steel frame. The opening on each level was designed to be covered by flooring consisting of five planks. They stood on each level’s flooring and handed down the tubular pieces of that level, then went to the next lower level and removed the overhead planks on which they had been previously standing. This process was repeated an unknown number of times before claimant "became aware that all of the planking had been removed from the lower levels of the scaffold”, apparently by other workmen. Without any flooring available to him, claimant evidently lowered one plank to the level below to stand on as he took down the tubular framing of that level. When he was so employed on the bottom level (approximately 8 to 10 feet above the ground), he turned around to lower part of that frame to the ground and fell. In his claim and his deposition, he states that he may have been taken off balance when his *512 clothing was caught by a piece of wire attached to the frame. More critical to this motion are his undisputed statements that there were no safety devices present to prevent his falling; he specifically mentions the absence of any back braces, railings, "outriggers”, safety nets or lifelines. Clearly, there was also an unsafe floor of 1 plank instead of the 5 necessary to completely cover the floor.
Claimant has now moved, pursuant to CPLR 3212, for partial summary judgment on the issue of the State’s liability under section 240 of the Labor Law. Other pleaded causes of action based on sections 200 and 241 (6) of the Labor Law are unaffected by this motion. Sections 200 and 241 (6) are codifications of the common-law duty of owners and contractors to furnish a safe workplace (Long v Forest-Fehlhaber, 55 NY2d 154). In contrast, section 240 imposes an absolute, nondelegable duty on owners and contractors to provide adequate safety devices. If evidence establishes that the statute was violated and that such violation was a proximate cause of the worker’s injury, the owner or contractor will be held strictly liable. Consequently, the defenses of comparative negligence, assumption of risk or fellow servant negligence are not available. (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 521.)
APPLICABILITY OF SECTION 240
The State argues that section 240 is inapplicable to workers who are not directly engaged in the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure” (Labor Law § 240 [1]) and supports this argument by reference to cases decided under prior versions of the current statute.
The original precursor of section 240 (1) was enacted in 1885 (L 1885, ch 314); that law prohibited one employing or direct-, ing another to do certain work on buildings from "knowingly or negligently” providing unsuitable or defective items such as scaffolding. After several subsequent amendments, the original law was repealed and in its stead a new statute was enacted as former section 18 of the Labor Law (L 1897, ch 415, § 18). Former section 18 omitted the reference to "knowingly and negligently” and imposed instead an absolute prohibition on providing inadequate protection to workers. Former section 18 was repealed and the current statute enacted in 1921 (L 1921, ch 50); subsequently, its absolute duty was imposed on *513 contractors and owners, rather than on employers and those directing work (L 1969, ch 1108, § 1).
Neither the parties nor the court have been able to locate a case decided under section 240 that deals with the particular question presented here. Relying only on decisions based on former section 18, one reaches the conclusion stated in the discussion of the current law contained in New York Jurisprudence: "Where injury results from a fall from, or the collapse of, a scaffold which was being built, dismantled, or moved, the structure is not within the purview of the statute.” (52 NY Jur 2d, Employment Relations, § 249.) The case cited for this proposition, Ferrick v Eidlitz (195 NY 248), involved a worker who was injured while removing the roof of a temporary shed. The Court of Appeals held that the injured worker had not been placed on the shed to work from it but to remove it and that he was only owed the duty of ordinary care, not the protection of former section 18 of the Labor Law.
A clearer example is found in Rice v Cummings Constr. Co. (164 App Div 376, after retrial 169 App Div 832), where the central and only issue was whether at the moment he fell to his death, a worker had been engaged in demolishing an extremely high platform or standing on it to perform work in the construction of a bridge. The inapplicability of former section 18 if he had been engaged in demolishing the platform was stated succinctly: "[M]anifestly an employer cannot maintain a railing around a platform at the very instant when it is being torn away; or have the floor planks nailed down at the instant when they are being torn up.” (Supra, at 834.)
Only one of the cases decided under former section 18 indicates a limited exception to this rule. In Jones v Gamble (140 App Div 733, affd 205 NY 627), the plaintiff was injured while standing on a scaffold that had been built for workers constructing a farmhouse. His injury was caused when the plank on which he was standing broke. However, at the moment of such breaking, the worker was engaged in putting planks on a higher part of the scaffold rather than working on the building itself. After noting the uniqueness of this situation, the Fourth Department held that former section 18 was applicable because the lower part of the scaffold had been completed, it had been and would be used for its intended purpose (constructing the farmhouse), and the injury-causing defect was in its original construction.
There appears to be little question, however, that if the *514 facts of the present case were to have been considered with reference to former section 18, that statute would have been held inapplicable. In Pursley v Edge Moor Bridge Works (56 App Div 71, 76, affd 168 NY 589), which involved an injury arising from the manner in which a scaffold was being constructed, the plaintiff’s argument for statutory protection was speedily dismissed: "We think * * * that the statute which gives a remedy against the master in favor of an employee who is injured while working on a scaffold by reason of some defect therein, has reference to a completed scaffold.”
Defendant’s argument that decisional law under former section 18 continues to establish the contours of liability now imposed by section 240 is considerably weakened when one looks closely at the two provisions. Reduced to fundamental terms, former section 18 states that an employer may not furnish workers unsafe devices or devices that are not used in a manner to provide proper protection. The thrust of the current legislation is different. Reduced to similarly fundamental terms, section 240 (1) states that owners and contractors shall furnish devices that shall be used in a manner to provide proper protection. Although the ultimate purpose of the two statutes is similar, the earlier version merely prohibited endangerment while the current law affirmatively requires protection.
This distinction alone does not logically alter the types of work involved or the class of workers benefited. Nevertheless, the change in focus between the two statutes reflects strong public policy considerations and an altered allocation of the ultimate responsibility and burden of assuring safety in the workplace. (See generally, Haimes v New York Tel. Co., 46 NY2d 132, 136-137; Allen v Cloutier Constr. Corp., 44 NY2d 290, 297-300; Matter of Rocha v State of New York, 77 Misc 2d 290, 297-298, affd 45 AD2d 633, lv denied 36 NY2d 642.) These policy considerations and the pattern of decisional law under section 240 provide convincing authority that the earlier cases discussed above no longer control the issue before us.
Under current case law, when work is being performed in connection with, although not literally on, a building or structure, the modern statute has been held applicable. In Ploof v B. I. M. Truck Serv. (53 AD2d 750), plaintiff’s decedent was killed when a cable on an unloading device snapped while he was unloading a shipment of concrete pallets needed in the principal construction. The Third Department determined that unloading was "part of’ the construction and *515 erection of the bridge and stated that the intent of section 240 (1) was to "seek extra protection for workmen working on any structure who use dangerous equipment, as defined in the statute, such as scaffolds, hoists, ladders, pulleys and ropes.” (Supra, at 751.) In Nagel v Metzger (103 AD2d 1, 9), in which the plaintiff was injured during tree cutting and removal work, the Fourth Department indicated that the distance of a particular job from the site of alteration (or construction) would be "of no consequence” if the work was "necessary and incidental to the project”.[2]
Section 240 affirmatively requires that scaffolding and other safety devices be provided. It would be illogical for the Legislature to have enacted a statute affirmatively requiring safe scaffolding and other devices for the protection of workers while denying similar protection to the very same (and other) workers when they erect and demolish such devices. Relying on the modern cases and the change in the duty owed under section 240 as compared to former section 18, we conclude that under section 240 of the Labor Law erection and demolition of scaffolds in connection with constructing and altering buildings and structures are necessary and incidental parts of the over-all task and that workers engaged in such erection and demolition are entitled to the statute’s protection.
LIABILITY UNDER SECTION 240
Claimant seeks summary judgment on this cause of action on the basis of his sworn statements that no safety devices were supplied, provided or made available to him at the time of the fall and on his description of the accident. In essence, claimant is alleging that the scaffold, at the time of the accident, was an unsafe workplace because of the unnecessarily inadequate flooring and that even in the process of demolition there were safety devices which could have prevented the accident. Defendant does not dispute claimant’s assertion that safety devices were not supplied or his account of the accident. More to the point, defendant does not show, by evidentiary proof in admissible form, that there is doubt regarding these *516 material issues of fact. (Zuckerman v City of New York, 49 NY2d 557.) Rather, defendant objects to summary judgment on the ground that the submissions of claimant provide nothing more than speculation that any particular equipment was required for the work or that any such equipment or additional flooring would have prevented the accident.
With respect to the issue of whether any safety devices should have been provided and, if so, what kind, the Court of Appeals recently stated that "failure to provide any protective devices for workers at the worksite establishes an owner or contractor’s liability as a matter of law”. (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 521, supra.) One of the two cases consolidated in Zimmer involved a workman who was injured while performing the earliest steps of erecting a steel skeleton for a building addition. He had scaled a vertical column in order to direct the positioning of a horizontal beam and lost his grip on the column. The court overruled the Appellate Division’s holding that "conflicting expert testimony concerning the utility and feasibility of safety devices at this early stage of the construction” raised questions of fact as to whether there had been a violation of the Labor Law.[3] (Supra, at 519.)
The majority in Zimmer (supra) also rejected the dissent’s argument that section 240 was not "intended to impose upon owners and contractors the responsibility for accidents they could not have prevented.” (65 NY2d, supra, at 527 [Wachtler, Ch. J., dissenting].) The majority view has subsequently been restated in Bland v Manocherian (66 NY2d 452, 460, n 2) as follows: "Absolute liability was imposed under Labor Law § 240 (1) even though a factual question was raised as to whether other safety devices were necessary or even feasible.”
In the instant case, it is conceded that there were no safety devices in use to protect claimant from falling off the remaining part of the scaffolding frame being demolished. Under this court’s reading of Zimmer (supra) and subsequent cases (see, e.g., Linney v Consistory of Bellevue Refm. Church, 115 AD2d 209), the total absence of any safety devices is sufficient to establish that there was a violation of section 240 (1).
*517 Moreover, a violation of the statute could arguably be based on the absence of adequate supervision which would have prevented the scaffolding, which is one of the enumerated safety devices, from being dismantled in such a hazardous fashion. "As a matter of policy, a failure of the owner or general contractor to exercise the nondelegable duty to inspect and supervise in order to prevent improper construction, placement or operation [of safety devices] gives rise to absolute liability under the statute” (Camillo v Olympia & York Props. Co., 136 Misc 2d 315, 318).
It is still necessary for claimant to establish that the violation of section 240 was a proximate cause of his injuries (see, Amedure v Standard Furniture Co., 125 AD2d 170). In Zimmer (supra), the Court of Appeals 'stated that a directed verdict would be proper "where there is no view of the evidence at trial to support a finding that the absence of safety' devices was not a proximate cause of the injuries” (65 NY2d 513, 524, supra). In a concurring opinion, Judge Simons distinguished the accidents in Zimmer (one plaintiff who lost his grip on a vertical column and one who fell from a roof) from the one involved in Smith v Hooker Chems. & Plastics Corp. (89 AD2d 361, appeal dismissed 58 NY2d 824). In that case, there was a factual issue as to "whether the injuries were caused by the failure to supply and properly place safety devices or by the refusal of the worker to use the devices supplied” (65 NY2d 513, 525, supra [Simons, J., concurring]).
Smith (supra) has remained the standard for determining when, despite a statutory violation, there is no liability due to the absence of proximate cause, but its holding has been read restrictively. (Lickers v State of New York, 118 AD2d 331, 334-335; Heath v Soloff Constr., 107 AD2d 507, 510-512.) The Third Department has indicated that liability may be denied when there is no factual evidence that could reasonably be construed to establish the existence of any "unsafe or hazardous work condition which caused the accident.” (Amedure v Standard Furniture Co., 125 AD2d 170, 173, supra.) In general, short of proven refusal by a worker to use safety devices or a worker’s decision to move away from the safety devices provided (Connota v One Estate, 127 AD2d 811), it is accepted that there is no burden on the worker to affirmatively provide for his own safety. Thus, courts have found the necessary causal connection even when a worker is injured by equipment that he himself constructed in a negligent fashion or *518 operated improperly. (See, Camillo v Olympia & York Props. Co., 136 Misc 2d 315, supra, and cases cited therein.)
In the instant case, claimant was performing work incidental to and necessary for the construction of a building. His work involved the danger of a fall from an elevated height and there were no safety devices present to prevent such a fall and no adequate supervision to prevent the unnecessarily premature removal of flooring. He lost his balance, fell, and was injured. The condition of the scaffold and/or the absence of any safety devices inevitably caused the fall and subsequent injury to result from his loss of balance. We also note that, in addition to the absence of any safety devices, a safety feature which was present (flooring) had been prematurely removed, thus contributing to the totality of the unsafe or hazardous condition which was a proximate cause of the accident. In the absence of any evidentiary proof supplied by defendant to raise questions as to any of the material facts, we hold that there was a violation of Labor Law § 240 (1), that the violation was a proximate cause of claimant’s injuries,‘and that, consequently, the State is liable as a matter of law.
Claimant’s motion is granted and the Chief Clerk is directed to enter partial summary judgment in favor of claimant on the issue of liability as to that portion of the claim alleging a violation of section 240 (1) of the Labor Law.

. Taber L. Alderman is also a claimant in this action. She seeks damages for loss of consortium. However, all relevant issues relate to Joey Alderman and thus "claimant” Will refer to Joey Alderman.

. In Nagel v Metzger (103 AD2d 1, 9), section 240 of the Labor Law was held to be inapplicable because the statute was read as applying only to employees working on elevated structures. There has been considerable discussion regarding this interpretation of Labor Law § 240 (see, Dougherty u State of New York, 113 AD2d 983; see also, Simon v Schenectady N. Congregation of Jehovah’s Witnesses, 132 AD2d 313), but that dispute does not affect the instant case.

. This appears to be at least a partial departure from previously controlling case law indicating that the question of what constituted "proper protection” was to be determined on the particular facts and circumstances of each case (see, Kalofonos v State of New York, 104 AD2d 75, 78-79; Phillips v Flintkote Co., 89 AD2d 724, 725).