OPINION OF THE COURT
Paul A. Victor, J.
Plaintiffs’ motion to reargue a motion for summary judgment is granted, and on reargument, the Court determines as follows:
Background and Procedural History
Plaintiff, an employee of a subcontractor, was injured on July 10, 1998, when he fell from a platform which was at an elevation above 20 feet, at the exterior of the third floor of a building then under construction as part of the 42nd Street redevelopment project in New York City. Plaintiff claims that he lost his balance as he pulled a beam toward himself, and fell from the platform, both because it was not equipped with a safety railing as required by subdivision (2) of section 240 of the Labor Law, and because he was not otherwise provided with “proper protection,” as required by subdivision (1) of section 240 of the Labor Law.
Defendants claim that the plaintiff was not working on a traditional scaffold, but rather, on a platform which was itself part of a “shoring system,” comprised of interlocking horizontal and vertical pipes, which had been erected beyond the exterior of the building to facilitate the pouring of concrete. The shoring system was being dismantled at the time of the accident. Prior to the accident, the shoring system was allegedly equipped with guardrails, but it was necessary to remove the guardrails during the dismantling process. It is not disputed that at the time of the accident plaintiff had not been provided with any alternate safety personal fall arrest system, such as a safety harness, a lifeline, or safety netting.
Plaintiffs commenced this action alleging various causes of action based on common-law negligence as well as on alleged *27 violations of sections 200, 240 (1) and 241 (6) of the Labor Law. Plaintiffs now move to amend the pleadings and the bill of particulars to include a claim under section 240 (2), and for summary judgment against all defendants based only on alleged violations of subdivisions (1) and (2) of Labor Law § 240.
Amendment of Pleadings and Bill of Particulars
Plaintiffs seek to amend the pleadings and bill of particulars to assert an absolute liability claim pursuant to subdivision (2) of section 240 of the Labor Law, which provides generally that scaffolding more than 20 feet from the ground must be equipped with a safety rail Plaintiffs argue that since there were no guardrails on the scaffold and the plaintiff fell from a height in excess of 20 feet, the plaintiffs are entitled to summary judgment. (Rose v Mount Ebo Assocs., 170 AD2d 766 [3d Dept 1991].) Although this precise theory of recovery was not specifically raised in the prior pleadings and papers, the plaintiffs have always maintained that the platform was above 20 feet and lacked a safety rail. Consequently, any error by plaintiffs in failing to specify a violation of Labor Law § 240 (2) is both nonprejudicial and excusable. (CPLR 3025 [b]; Ganci v Port Auth. Trans-Hudson Corp., 258 AD2d 386 [1st Dept 1999]; Napolitano v DGM-I Corp., 255 AD2d 567 [2d Dept 1998].) However, although the motion to amend the pleadings and bill of particulars is granted, for the reasons set forth below, the plaintiffs’ motion for summary judgment pursuant to Labor Law § 240 (2) is denied.
Discussion
A. Core Objective of Section 240 as It Relates to Proximate Cause
The core objective of section 240 is proper protection. Therefore, a nondelegable duty is imposed upon all responsible entities to protect construction workers, not just with scaffolds, but with such “other devices * * * as to give proper protection to [such workers]” (Labor Law § 240 [1] [emphasis supplied]). When a construction worker is not provided with “proper protection” and is injured as a result of one of the hazards, which section 240 was enacted to eradicate, the general common-law defenses are not available, and absolute liability is imposed on all responsible entities. However, it has been made abundantly clear that “section 240 * * * does not give absolution to the plaintiff when his injury has been caused, exclusively, as a result of his own willful or intentional acts ” *28 (Tate v Clancy-Cullen Stor. Co., 171 AD2d 292, 296 [1st Dept 1991] [emphasis supplied].) This kind of egregious conduct has evolved into the legal “axiom” that liability will not be imposed upon owners and contractors when the worker’s conduct is the “sole proximate cause” of the occurrence. (Weininger v Hagedorn & Co., 91 NY2d 958, 960 [1998] [emphasis supplied], rearg denied 92 NY2d 875 [1998].)
B. The Proximate Cause v. A Proximate Cause
In order to impose absolute liability upon a responsible entity, the injured plaintiff need only prove that a violation of Labor Law § 240 occurred, and that the violation was “a” proximate cause (not the only cause) of the plaintiff’s injuries. (Smith v Hooker Chems. & Plastics Corp., 89 AD2d 361, appeal dismissed 58 NY2d 824.) Obviously, if the failure of the defendants to provide a statutorily required safety device was a contributing factor to the happening of the occurrence, then under no scenario can it be said that plaintiff’s conduct was the “sole” proximate cause. Defendants claim that the plaintiff was provided with a safety device (a shoring system which functioned as a scaffold), and, citing Weininger (supra) and other cases (mostly in the Second Department), argue that when there is a fall from a scaffold, a question of fact is always presented as to whether plaintiff’s conduct was the sole proximate cause of the accident.
In Weininger (supra), the plaintiff fell from a ladder which he needed in order to pull wiring through a series of holes in a ceiling. The Court of Appeals held that it was error for the trial court to have directed a verdict because “[i]n the circumstances presented, a reasonable jury could have concluded that plaintiff’s actions were the sole proximate cause of his injuries, and consequently that liability under Labor Law § 240 (1) did not attach [citation omitted].” (91 NY2d, supra at 960 [emphasis supplied].) Unfortunately, not all of the “circumstances” were set forth in the decision of the Court of Appeals nor in the decisions of the two lower courts.
Recently, however, one court reviewed the record on appeal in Weininger (supra) and discovered that Weininger was consistent with all past precedent and did not espouse a new theory of sole proximate cause. (Secord v Willow Ridge Stables, 179 Misc 2d 366 [Sup Ct, Monroe County 1999], affd 261 AD2d 965 [4th Dept 1999].) In Secord, Justice Siracuse persuasively maintains that the Weininger decision does not represent a radical break from precedent, and he observed that the underlying facts of Weininger included a defense, evidently *29 disputed by the plaintiff, that the plaintiff had intentionally misused the safety device with which he was provided. Justice Siraeuse explained (at 870-371):
“The Weininger] record on appeal * * * shows that there was evidence before the Court that plaintiff was standing on the crossbar of the ladder, a misuse of the deoice. The omission of this key fact from all the written decisions is surprising, because it is the best explanation of the Court of Appeals holding. While the testimony was questionable, it would clearly have been possible for a reasonable jury to conclude that the accident was caused by this misuse rather than any defect in the ladder itself or its placement or operation; this issue of fact would preclude a directed verdict or summary judgment.”
In any event, as a result of the failure of the Weininger bench to explain the circumstances upon which the decision was founded, and the failure of litigants and some courts to search the record on appeal, an abundance of litigation was spawned, which contributed to a divergence of opinion in the various Departments of the Appellate Division as to whether summary judgment or a directed verdict should be granted in cases involving a fall from scaffolds or ladders.[1] Following Weininger, numerous defendants argued that triable issues are automatically presented, and some trial courts expressed (and apparently still do express) a reluctance to grant summary judgment or direct a verdict when a construction worker is injured as a result of a fall from a ladder or a scaffold. Some of these decisions, especially those in the Second and Third Departments, appear to engage in a fusion of what should be discrete concepts, i.e., comparative negligence (which is not relevant in an absolute liability case), and intentional culpable conduct (such as misuse and/or recalcitrance), which may be used to *30 defeat such a claim. It is clear to this Court, however, that when the circumstances demonstrate that a statutory violation was a contributing factor to a worker’s fall from a ladder or scaffold, the worker’s comparative negligence (as distinguished from intentional wrongdoing) is factually and legally irrelevant, and should not be used to defeat summary judgment on the pretext or speculation that the accident may have been caused “solely” because of the culpable conduct of the worker. (See, Kyle v City of New York, 268 AD2d 192, 196 [1st Dept 2000].)
C. Limitations on the Sole Proximate Cause Defense
This Court concludes that the “sole proximate cause” defense should be limited to the situation where a worker has been provided with “proper protection,” and the worker thereafter, through intentional misuse of the safety device, or via other egregious misconduct, neutralizes the protections afforded by the safety device. However, once plaintiff makes a prima facie showing that he was subjected to one of the hazards covered by section 240, the burden shifts to the defendants to provide evidentiary proof in admissible form (not speculation) sufficient to establish that proper protection was afforded but rendered ineffective as a result of intentional or culpable conduct on the part of plaintiff. Every inquiry by the court into proximate cause must then necessarily include a review of the scope of the “hazards” and the “protections” intended to be covered by section 240, as well as an analysis and determination as to who bears the burden of proof, production and persuasion on the issues presented.
Although section 240 does not expressly set forth the occupational hazards sought to be addressed, it does by inference identify these special hazards via a menu of expressly stated safety devices by which these construction perils are to be avoided and the core objective (i.e., proper protection) achieved. As observed by the Court of Appeals:
“Labor Law § 240 (l)’s list of required safety devices * * * evinces a clear legislative intent to provide exceptional protection for workers against the ‘special hazards’ that arise when the work site either is itself elevated or is positioned below the level where ‘materials or load [are] hoisted or secured’ * * * [The] ‘special hazards’ referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately *31 secured [citation omitted].” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500-501 [emphasis supplied].)
In other words, as stated in Ross (supra), section 240 was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person.
Plaintiff has clearly provided prima facie proof that he was exposed to and injured as a result of a “specific gravity related hazard” (falling from a height) as described in Ross (supra). Plaintiff argues that since the worksite platform on which he was working did not have a safety rail, and as he was given no other personal fall arrest device which would have protected him from such a fall, both subdivisions (1) and (2) of section 240 were violated. Since defendants claim compliance with section 240, it becomes necessary for the Court to determine whether a shoring system, which is being dismantled, qualifies as a scaffold, and, if so, the applicability of subdivisions (1) and (2) of section 240.
D. What Constitutes a Scaffold
Although dependant upon the facts and circumstances of each case, it has generally been held that almost any platform, no matter how temporary or makeshift, which is intended to provide a construction worker with support and footing above the ground level will qualify as a scaffold within the purview of the Labor Law, and it matters not that the “scaffold” (or other structure serving as same) is in the process of being constructed or dismantled when it fails to provide “proper protection” within the meaning of Labor Law § 240. (Torino v KLM Constr., 257 AD2d 541 [1st Dept 1999]; Kyle v City of New York, 268 AD2d 192 [1st Dept 2000].)
In Kyle (supra), the plaintiff and other workers were engaged in affixing a prefabricated platform to the underside of the bridge, which after installation was to serve as a work surface for bridge repairs. The platform, which was installed with the use of two cranes, buckled and pitched over, causing death and serious injury to the workers. The court reasoned that, although the platform was part of the work in progress, plaintiff could only have performed the work while standing on the platform itself, and as no alternative scaffolding was provided, “the platform constituted a scaffold within the parameters of Labor Law § 240 (1)” (at 198). Nevertheless, the court found *32 that this “scaffold” was ineffective as a safety device since it “proved inadequate to shield [plaintiff] from harm directly flowing from the application of the force of gravity to * * * [his] person.” (Id.) In addition, relying on a number of earlier cases cited in Alderman v State of New York (139 Misc 2d 510 [Ct Cl 1988]), the Kyle panel stated and held that (at 197):
“We agree with the reasoning of the Court of Claims and note that other cases have held that Labor Law § 240 (1) applies even in those situations when the scaffold which is alleged to have failed was in the process of being dismantled or constructed.” (Citations omitted; emphasis added.)
What is not expressly articulated, but is implied, in Kyle is that a “scaffold” which is in the process of being constructed or dismantled also clearly qualifies as a “structure” within the purview of section 240 (1), and as with buildings under construction, alteration, or demolition, a worker toiling on a “structure” must be provided with “other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.” If the platform on which the plaintiff was standing constituted a “scaffold” (and thus itself a safety device), it still proved, as stated in Kyle, inadequate to give proper protection. However, if the platform was not serving aá a scaffold, and was merely part of a “structure” being dismantled, section 240 (1) was still violated since plaintiff was not provided with at least one of the other safety devices required by the provision of the Labor Law.
Plaintiff does not describe the precise nature of the work in which he was engaged when he fell from the platform, but he also does not refute the defendants’ claim that the shoring system was being dismantled, and that the safety rails (as required by subdivision [2]) had been removed during the dismantling process. Defendants, on the other hand, do not materially refute plaintiff’s version of the event (other than reliance on inconsequential inconsistencies and speculation), and do not refute plaintiff’s claim that he was not provided with any alternative personal fall arrest safety device which could have protected him from a fall from the platform, no matter what function the platform was then serving. What remains unclear from all of the papers submitted is whether, at the precise moment of the accident, the shoring system was merely a structure being dismantled, or whether the platform thereon was also simultaneously and necessarily (as in Kyle) serving as a scaffold for the demolition process or some other *33 construction purpose. What is clear is that under any possible scenario, section 240 (1) was violated. The same cannot be said for section 240 (2).
E. Subdivision (2) Not Violated
Subdivision (2) of section 240 applies only to “[s]caffolding or staging more than twenty feet from the ground or floor.” Unlike subdivision (1), it does not require other safety devices for buildings or structures under construction or demolition. Although a strict and literal reading of section 240 (2) would impose a safety railing requirement to a scaffold being dismantled, the law does not require the court to abandon its common sense. Such a hypertechnical application of the statute to a scaffold under demolition would impose unreasonable, if not impossible, obligations upon owners and contractors. (See, e.g., Rice v Cummings Constr. Co., 169 App Div 832, 834 [3d Dept 1915] [“manifestly an employer cannot maintain a railing around a platform at the very instant when it is being torn away, or have the floor planks nailed down at the instant when they are being torn up”].) However, the core purpose of the enactment (proper protection) is not violated by a commonsense construction which declares subdivision (2) inapplicable to a structure during the dismantling process, since subdivision (1) of section 240 expressly provides that “other” proper protection be provided during the construction and demolition phases “of a building or structure.” Summary judgment under subdivision (2) is denied since questions of fact remain as to the precise function of the platform at the time of the accident.
F. Subdivision (1) Violated
Plaintiff has established prima facie that he was subjected to a gravity-related hazard; that defendants failed to provide a safety device mandated by section 240 (1); and that he was injured as a result of a fall from a height. Defendants have not come forward with anything, other than speculation, that plaintiff may have engaged in intentional egregious conduct which rendered ineffective proper protections provided by the defendants. Although defendants argue that there are inconsistencies in the account of the accident given by plaintiff, these inconsequential inconsistencies, which do not relate to proximate cause, or undermine the credibility of the plaintiff, do not require denial of plaintiffs’ motion for summary judgment (see, e.g., Griffin v MWF Dev. Corp., 273 AD2d 907 [4th Dept 2000].)
*34 Conclusion
The plaintiffs name as defendants in this proceeding the following five entities: 1. 42nd St. Development Project, Inc. (42nd Street); 2. Empire State Development Corporation (Empire); 3. Dream Team Associates, L. L. C.; 4. Tishman Construction Corporation of Manhattan; and 5. Tishman/Aoki 42nd Street Partners, a joint venture. As to each of the named defendants the Court concludes that they are responsible parties, except for defendant Empire, which does not, at this juncture, appear to qualify as a responsible party. This corporation, which is a wholly owned subsidiary of the New York State Urban Development Corporation, is merely the sole owner/shareholder of 42nd Street.[2]
Plaintiff’s motion is accordingly granted in part and denied in part, as indicated.

. The Second and Third Departments have held that the fall itself does not establish a violation of the statute, when the safety device has not collapsed, slipped or otherwise failed to perform its function of supporting the worker and his or her materials. (Smith v Pergament Enters., 271 AD2d 870, 871 [3d Dept 2000]; Nelson v Ciba-Geigy, 268 AD2d 570, 571 [2d Dept 2000].) The rule in the First Department is unclear (compare, Zeitner v Herbmax Sharon Assocs., 194 AD2d 414, with Robinson v NAB Constr. Corp., 210 AD2d 86). The Fourth Department has held that summary judgment will not be denied merely because a scaffold or ladder from which a worker fell did not break, collapse or otherwise fail. (Abramo v Pepsi-Cola Buffalo Bottling Co., 224 AD2d 980, 981-982.) For a discussion as to whether the Weininger decision varies the Fourth Department rule, see Guite v Cooke Bros. (178 Misc 2d 948 [Sup Ct, Monroe County 1998].)

. Empire is not a party to any of the agreements, or identified as an owner, contractor or agent in any of the lease or construction agreements. There is no evidence that Empire in any way exercised control, or had the authority to exercise control, over its subsidiary in connection with the construction project at issue. Absent such evidence, a parent corporation will not be held liable under Labor Law § 240. Nor, under these facts, has it been established that Empire would be liable under Labor Law § 240 as a contractor. (Clapp v Eastern Rock Prods., 167 AD2d 902 [4th Dept 1990].)