OPINION OF THE COURT
Kibbie F. Payne, J.
*908 The above-captioned actions have been consolidated for the purpose of conducting joint discovery in connection with a construction accident which occurred on September 29, 1997, during the structural rehabilitation of the outer roadways of the Queensborough Bridge. Each of the plaintiffs, who are represented by the same law firm, move for an order directing the entry of summary judgment in their favor and for an immediate assessment of damages as against the City of New York on the issue of liability pursuant to CPLR 3212 and Labor Law § 240 (1). The defendant City of New York cross-moves for summary judgment in its favor dismissing the complaints on the ground that the evidence adduced at the depositions and the General Municipal Law § 50-h hearings establishes that there was no violation of Labor Law § 240 as alleged by plaintiffs, and that the evidence fails to demonstrate that the City engaged in any conduct which was the proximate cause of plaintiffs’ injuries. As to plaintiffs’ causes of action alleged under Labor Law §§ 200 and 241 (6), the City claims that all applicable sections of the Industrial Code were complied with because plaintiffs were all supplied with protective devices (body harnesses) which performed as intended. The City claims, further, that there was no violation of section 200 because it did not supervise or control the rehabilitation work.
Plaintiffs are ironworkers, injured when in the process of erecting or installing work platforms to the underside of the Queensborough (59th Street) Bridge, a section of the platform being installed and positioned for connection to the structural steel of the bridge, collapsed and buckled, causing plaintiffs to remain suspended in the air above the East River until rescued and lowered by a crane to safety. Five ironworkers, including the above-named plaintiffs, were injured and a sixth worker was killed. It is undisputed that in August 1995, work began on the bridge pursuant to a written contract between the City of New York, as owner, and Grow-Perini, a joint venture. The injured plaintiffs were all employees of the joint venture and working under the direct supervision of Grow-Perini. While the City did employ engineering personnel, the extent of their involvement in the supervision or direction of any employees engaged in the actual work is not clear. According to the City’s own account of the deposition testimony, the evidence establishes that plaintiffs, who had been instructed to install five platforms to the underside of the bridge on the day of the accident, were required as part of the procedure of installation, to step off from a stationary (or already fixed) platform onto *909 the platform they were in the process of installing, in order to connect the steel straps of the platform to the trolley beam of the under structure of the bridge. Thus, defendant contends that “while the platform may arguably have become a safety device once installed, it was clearly not a safety device during the erection procedure * * * [That] it was the platform installation which exposed the workers to the risks of gravity * * * [and] other protection was required” and provided, in the form of safety harnesses, lanyards and yo-yos, which prevented plaintiffs from plummeting to the water below after the platform being installed collapsed.
Labor Law § 240 (1), often called the “scaffold law,” provides that “[a] 11 contractors and owners * * * shall furnish or erect, or cause to be furnished or erected * * * scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to” workers employed (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 499-500). The purpose of the statute is to protect workers and to impose the responsibility for safety practices on those best situated to bear that responsibility (see, Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520; 1969 NY Legis Ann, at 407). A violation of Labor Law § 240 (1) imposes absolute liability on an owner or contractor who fails to furnish or erect proper safety devices and protections for any worker injured while performing an elevation-related task associated with the demolition, repairing, altering, painting, or cleaning of a building or structure (see, Rocovich v Consolidated Edison Co., 78 NY2d 509, 512; Zimmer v Chemung County Performing Arts, supra, at 520; Haimes v New York Tel. Co., 46 NY2d 132, 136-137). Labor Law § 240 is designed to prevent the type of accident where the “protective device [s] proved inadequate to shield the worker from harm directly flowing from the application of the force of gravity to an object or [a] person” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501). Moreover, “[a] breach of that statutory duty, which is to be broadly applied, results in the imposition of absolute liability, irrespective of any contributing negligence of the employee * * * [and] is not satisfied merely because a safety device of one sort or another was made available to the injured employee at the work site. ‘Proper protection’ requires that the device must be appropriately placed or erected so that it would have safeguarded the employee * * * and that the furnished device itself must be adequate to protect against the hazards entailed in the per *910 formance of the particular task to which the employee was assigned * * * Put another way, the availability of a particular safety device will not shield an owner or general contractor from absolute liability if the device alone is not sufficient to provide safety without the use of additional precautionary devices or measures” (Conway v New York State Teachers’ Retirement Sys., 141 AD2d 957, 958-959; see also, Pritchard v Murray Walter, Inc., 157 AD2d 1012, 1013).
In order to establish a prima facie cause of action entitling plaintiffs to summary judgment, the plaintiffs must prove that the statute was violated and that the violation was a proximate cause of the injury sustained (Bland v Manocherian, 66 NY2d 452; Limauro v City of N. Y. Dept. of Envtl. Protection, 202 AD2d 170). However, I find that in order for the statute to have a logical application, it must be viewed as contemplating injuries sustained as the result of the absence of or defect in a completed scaffold. (See, Pursley v Edgemoor Bridge Works, 56 App Div 71 [summary judgment granted in favor of a plaintiff whose decedent was killed in process of erecting scaffolding where no other safety device was provided].) Because plaintiffs were in the process of installing the platforms it cannot be said that the platforms were a “furnished or erected” safety device provided by defendants for plaintiffs’ protections while engaged in the actual work of installation (cf., Drivas v Breger, 244 AD2d 160), or that the platforms had been “appropriately placed or erected” so that they would safeguard the workers (Conway v New York State Teachers’ Retirement Sys., supra, at 958). Here, the platform was inadequate in and of itself to protect the workers against the hazards encountered while installing that same platform; and, in fact, the platform did buckle and collapse. That is why plaintiffs were provided with other safety devices, in the form of body harnesses, in order to satisfy defendant’s duty within the meaning of Labor Law § 240 (1). While the activity of installing the platform by connecting the modules to the bridge’s understructure is protected under the scaffold law as work “necessary and incidental” to the rehabilitation project (Curley v Gateway, 250 AD2d 888, 890), which activity exposed these plaintiffs to the extraordinary elevation risk of falling from a point of elevation approximately 132 feet above the river, the safety equipment provided and actually used by plaintiffs worked as intended and prevented them from free-falling. It is noted that even the fatality which occurred was not the result of a fall, but rather, was caused by crushing injuries. This is not to minimize the horrific experi *911 ence plaintiffs endured as they hung suspended above the East River for almost an hour. Nevertheless, it is a fact that plaintiffs were spared almost certain death by the use of the body harnesses provided. As such, I find, as a matter of law, that defendants satisfied their duty within the meaning of Labor Law § 240 (1), by providing plaintiffs with safety devices adequate for their protection during the work assigned (Prit-chard v Murray Walter, Inc., supra, at 1013; see also, Ross v Curtis-Palmer Hydro-Elec. Co., supra, at 501). Accordingly, so much of the complaints as asserts a cause of action under Labor Law § 240 is dismissed.
As to those allegations of plaintiffs’ complaints which assert claims under Labor Law §§ 200 and 241 (6), defendant City’s cross motion for summary judgment dismissing said claims is denied. There are contradictory assertions regarding the degree of involvement of the City over the work site, as well as the degree to which its personnel may have exercised supervision over the project, that make summary judgment treatment inappropriate. While plaintiffs need not show that defendants exercised supervision or control over the job site in order to establish their claim under Labor Law § 241 (6), to recover under section 200, however, such control and supervision must be established (see, Lombardi v Stout, 80 NY2d 290, 295). In addition, plaintiffs’ verified bill of particulars, dated March 28, 1998, contains sufficient allegations regarding defendants’ failure to comply with specific sections of the rules and regulations promulgated by the Commissioner of the Department of Labor, the Industrial Code and of the Occupational Safety and Health Administration, to create triable issues sufficient to withstand the cross motion for summary judgment.
Accordingly, plaintiffs’ motion is denied and the cross motion is granted only to the extent of dismissing so much of the complaints as allege a claim under Labor Law § 240 (1). The actions shall continue as to the remaining claims.