[707 NYS2d 445]

DuWayne Kyle et al., Appellants-Respondents, v City of New York, Respondent-Appellant.

First Department, May 18, 2000

**APPEARANCES OF COUNSEL**

*Scott N. Singer* of counsel, New York City (*Kenneth Sacks* on the brief; *Sacks & Sacks,* attorneys), for appellants-respondents.

*Stephen M. Cohen* of counsel, New York City (*Christopher J. Crawford* on the brief; *Brody, Fabiani & Cohen,* attorneys), for respondent-appellant.

**OPINION OF THE COURT**

NARDELLI, J.

In August 1995, structural rehabilitation work began on the 59th Street Bridge (the bridge), pursuant to a contract between the City of New York and Grow-Perini, a joint venture. The work involved the outer roadways and the north and south sides of the bridge, which spans the East River between New York and Queens Counties.

Plaintiff DuWayne Kyle is an ironworker who, on September 29, 1997, was employed by Grow-Perini and was engaged in attaching prefabricated platforms to the underside of the bridge. Once affixed, the platforms were to serve as a work surface for bridge repairs. The installation process utilized two cranes, one of which was located on the south outer roadway of the bridge and the other on a barge positioned in the river on the north side of the bridge. The cranes lifted the platform to a point near the underside of the span, at which point the workers would step off a previously attached, stationary platform onto the platform being held in place by the cranes so as to make the necessary connections. If the platform needed to be raised or lowered, the signal person on the suspended platform would radio instructions to one or both of the crane operators.

On the morning in question, plaintiff was a member of a crew of six ironworkers that had already attached three platforms to the bridge without difficulty. A fourth platform was then raised to a level approximately parallel with the

existing platforms, at which point the crew stepped onto the suspended platform. The crew was equipped with body harnesses, lanyards and "yo-yos," the latter of which is described by defendant as a device which can be analogized to a retractable dog leash, allowing the workers to move about freely while tied off to the structure.

The workers thereafter discovered that the platform was approximately six to eight inches too low and, as a result, the crew foreperson, Jimmy Cush, instructed the crane operator on the barge to raise the platform one "click." A click is described variously in the parties' submissions and examination before trial testimony as being in the range of from one to several inches. In any event, the platform "jerked up" several feet on one end and buckled into a massive "V," which resulted in the death of one crew member, Tommy Malcom, who was crushed as the scaffold collapsed. In addition, crew members Peter Cusumano and Jimmy Cush pulled themselves to safety on a beam, Richie Aaron remained trapped on the platform until the New York City Fire Department rescued him, and Peter Mongan and plaintiff fell approximately 30 feet, where they dangled in midair for approximately 45 minutes until pulled to safety by the Fire Department.

Plaintiffs commenced the within action against the City of New York by the service of a summons and verified complaint in February 1998, alleging violations of sections 200, 240 (1) and (3) and section 241 (6) of the Labor Law. Plaintiff's injuries included: cervical derangement and cervical radiculopathy, a disc bulge at C5, C6 and C6-C7, aggravation/activation of pre-existing degeneration of the cervical spine, traumatic cervical myofascitis with sequelae and traumatic right hip greater trochanteric bursitis. Plaintiffs' action was consolidated with those of Cusumano and Mongan for the purposes of joint discovery and the plaintiffs subsequently moved for partial summary judgment on the issue of liability on their Labor Law § 240 (1) and (3) claims, and the City cross-moved to dismiss the complaints in their entirety.

The IAS Court dismissed the Labor Law § 240 (1) claim and found that issues of fact exist with regard to the Labor Law § 241 (6) and § 200 claims. In dismissing the section 240 (1) claim, the IAS Court found that because the workers were provided with adequate safety harnesses for the work assigned, and "were spared almost certain death by [their] use," (182 Misc 2d 907, 911) defendant thereby satisfied its duty within the meaning of Labor Law § 240 (1). We disagree and modify

the order of the IAS Court to reinstate plaintiff's Labor Law § 240 (1) claim and, further, grant partial summary judgment thereon on the issue of liability.

Labor Law § 240 (1), which is commonly referred to as the "Scaffolding Law," provides, in pertinent part, that: "All contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays * * * and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The Court of Appeals has made it clear that the purpose of the statute is to protect workers by placing the " 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' (1969 NY Legis Ann, at 407), instead of on workers, who 'are scarcely in a position to protect themselves from accident' " (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520, quoting *Koenig v Patrick Constr. Co.*, 298 NY 313, 318; *see also*, *Rocovich v Consolidated Edison Co.*, 78 NY2d 509).

Thus, Labor Law § 240 (1) is to be construed as liberally as necessary to accomplish the purpose for which it was framed (*Rocovich v Consolidated Edison Co.*, *supra*, at 513; *Lombardi v Stout*, 80 NY2d 290; *Quigley v Thatcher*, 207 NY 66; *Casabianca v Port Auth.*, 237 AD2d 112), and it places *absolute liability* upon owners, contractors, and their agents for any breach of the statutory duty that is the proximate cause of a plaintiff's injuries (*Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Zimmer v Chemung County Performing Arts*, *supra*, at 521; *Joyce v Rumsey Realty Corp.*, 17 NY2d 118; *Amato v State of New York*, 241 AD2d 400, *lv denied* 91 NY2d 805). It is also well established that the duty imposed by section 240 (1) is nondelegable and that an owner or contractor who breaches that duty can be held liable in damages regardless of whether or not the job was performed by an independent contractor or other entity over which it had no supervision or control (*Gordon v Eastern Ry. Supply*, *supra*, at 559; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Rocovich v Consolidated Edison Co.*, *supra*, at 513; *Haimes v New York Tel. Co.*, 46 NY2d 132).

In *Rocovich v Consolidated Edison Co.* (*supra*, at 514), the Court of Appeals found, *inter alia*, a clear legislative intent to provide "exceptional protection" for workers against "special

hazards" which arise on work sites which are either elevated or positioned below the level where "materials or load [are] hoisted or secured." In *Ross v Curtis-Palmer Hydro-Elec. Co.* (*supra*, at 501), the Court of Appeals further defined, and narrowed, the application of section 240 (1) and instructed: "The 'special hazards' to which we referred in *Rocovich*, however, do not encompass any and all perils that may be connected in some tangential way with the effects of gravity. Rather, *the 'special hazards' referred to are limited to such specific gravity-related accidents as falling from a height* or being struck by a falling object that was improperly hoisted or inadequately secured." (Emphasis added.)

In the case before us, there is, in our view, no dispute that plaintiff was injured as the result of a fall from an elevated work site, so as to bring this matter squarely within the purview of Labor Law § 240 (1). The question presented at this juncture is whether summary judgment in plaintiffs' favor on the issue of liability is warranted.

A plaintiff, in order to be awarded partial summary judgment on a claim based upon Labor Law § 240 (1), must demonstrate, by admissible evidence, that the statute was violated and that such violation was a proximate cause of his/her injuries (*Rocovich v Consolidated Edison Co., supra*, at 513; *Robinson v NAB Constr. Corp.*, 210 AD2d 86; *Vencebi v Waldorf Astoria Hotel Corp.*, 143 AD2d 1004; *Mack v Altmans Stage Light Co.*, 98 AD2d 468).

Initially, we reject defendant's argument that the negligence of plaintiff and his co-workers was the sole proximate cause of the accident. It is settled that liability imposed under Labor Law § 240 (1) is absolute, rendering any alleged negligence on the part of the plaintiff irrelevant (*Angeles v Goldhirsch*, 268 AD2d 217; *Public Adm'r of Bronx County v Trump Vil. Constr. Corp.*, 177 AD2d 258). Here, at most, defendant's contentions revolve around speculation that one or more of the workers, either the ironworkers on the platform, the crane operators above and below, or some combination thereof, may have been negligent. Defendant, however, has failed to proffer any evidence that would even remotely establish that the accident was "caused exclusively by [plaintiff's] own willful or intentional acts" (*Clark v Fox Meadow Bldrs.*, 214 AD2d 882, 884; *Tate v Clancy-Cullen Stor. Co.*, 171 AD2d 292, 296).

Defendant also argues that the platform from which plaintiff fell was not a scaffold within the meaning of the statute and, in essence, that because plaintiff merely fell 30 feet, rather

than plummeting to his death in the river below, summary judgment is not warranted as the safety devices provided were "used and actually performed as intended." As noted above, plaintiff suffered traumatic back and hip injuries which are attributed to a whiplash effect. It should also be noted that the Federal Occupational Safety and Health Administration (OSHA) conducted an investigation into the accident and initially charged that Grow-Perini failed to: (1) ensure that the wood planking, weighing approximately 1,175 pounds, was removed before the platform was raised; (2) heed platform design specifications which prohibited their installation in excessive wind conditions; and (3) ensure that the crew's safety belts were affixed to separate vertical lifelines. The charges were subsequently settled by stipulation, which provided: "Two workers exposed to falls of approximately 135 feet to the river below from work platforms being installed to the underside of the bridge did not have their personal fall arrest systems connected to separate vertical life lines."

The IAS Court, relying on the holding of *Pursley v Edge Moor Bridge Works* (56 App Div 71, *affd* 168 NY 589), held that in order for section 240 (1) to have a "logical application" (182 Misc 2d, *supra,* at 910), there must be a defect in a *completed* scaffold. In *Alderman v State of New York* (139 Misc 2d 510), however, Judge Edwin Margolis of the Court of Claims explicitly rejected the holding in *Pursley*, noting that "the earlier version [of Labor Law § 240 (1), section 18 of the Labor Law, which was in effect when *Pursley* was decided] merely prohibited endangerment while the current law affirmatively requires protection" (*supra,* at 514).

The Court of Claims further opined that: "It would be illogical for the Legislature to have enacted a statute affirmatively requiring safe scaffolding and other devices for the protection of workers while denying similar protection to the very same (and other) workers when they erect and demolish such devices." (*Supra,* at 515.)

We agree with the reasoning of the Court of Claims and note that other cases have held that Labor Law § 240 (1) applies even in those situations when the scaffold which is alleged to have failed was in the process of being dismantled or constructed (*see, e.g., Reed v State of New York*, 249 AD2d 719 [partially dismantled scaffold tipped, causing plaintiff to fall]; *Pritchard v Murray Walter, Inc.*, 157 AD2d 1012 [plaintiff fell to his death through floor of scaffold he was in the process of dismantling]; *Engel v Nedwidek*, 91 AD2d 794 [plaintiff injured

while dismantling scaffold]; *Kennedy v McKay*, 86 AD2d 597, 598 [where the Court held that the old rule, which stated that "anything which constituted a part of the work itself could not at the same time constitute a scaffold within section 240 * * * (has) given way to the extent that the work itself may now become part of the place to work and may fall within the statute"]).

In the matter at bar, plaintiff, while erecting or attaching the scaffold to the bridge, could only perform this work while standing on the platform, as no alternative scaffolding was provided. Under these circumstances, it is clear that the platform constituted a scaffold within the parameters of Labor Law § 240 (1) and, further, that such scaffold failed.

Moreover, with regard to the adequacy of plaintiff's harness, this Court, in *Dominguez v Lafayette-Boynton Hous. Corp.* (240 AD2d 310), held that: "We recently stated that an injured person need not fall completely off a scaffold to recover under Labor Law § 240 (1) so long as the injury resulted from an elevation-related hazard * * * While liability under the statute does not extend to other types of harm even if the injuries are caused by the defective safety device, *it does apply where the device 'proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person.'* " (*Supra,* at 312 [emphasis added], quoting *Ross v Curtis-Palmer Hydro-Elec. Co., supra,* at 501; *accord, Gordon v Eastern Ry. Supply, supra,* at 561 [defendant's failure to furnish a safety device sufficient to protect plaintiff against the elevation-related risk posed by the assigned work constituted a breach of the duty imposed by Labor Law § 240 (1)].)

Here, it is evident that the safety device provided proved inadequate to shield plaintiff from the harm which flowed directly from the application of the force of gravity to his person* and we find defendant's argument, which equates plaintiff's survival with an adequate safety device, to be lacking in merit. In view of the foregoing, the imposition of strict liability, as set forth in Labor Law § 240 (1), attaches.

---

* It should be noted that in addition to the OSHA stipulation of settlement of charges discussed above, plaintiff points out that Industrial Code (12 NYCRR) § 23-1.16 (b) requires that the safety belt or harness "shall be properly attached either to a securely anchored tail line, directly to a securely anchored hanging lifeline or to a tail line attached to a securely anchored hanging lifeline" and that "[s]uch attachments shall be so arranged that if the user should fall *such fall shall not exceed five feet*." (Emphasis added.)

With regard to plaintiff's remaining claims, we agree with the IAS Court that issues of fact exist concerning plaintiff's Labor Law § 241 (6) and § 200 claims which preclude an award of summary judgment. Further, although the IAS Court did not explicitly address plaintiff's Labor Law § 240 (3) claim, we find that plaintiff failed to proffer any evidence, other than bald, conclusory statements, to establish that the scaffold could not support four times its weight, a precondition to recovery under that subdivision.

Accordingly, the order of the Supreme Court, New York County (Kibbie Payne, J.), entered October 19, 1999, which denied plaintiff's motion for summary judgment on the issue of liability, granted defendant's cross motion to the extent of dismissing plaintiff's Labor Law § 240 (1) and § (3) claims, and denied the cross motion to the extent that it sought the dismissal of the Labor Law § 241 (6) and § 200 claims, should be modified, on the law, plaintiff's Labor Law § 240 (1) claim reinstated, and plaintiff granted summary judgment as to the issue of liability thereon, and otherwise affirmed, without costs.

SULLIVAN, P. J., ELLERIN, WALLACH and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered October 19, 1999, modified, on the law, plaintiff's Labor Law § 240 (1) claim reinstated, and plaintiff granted summary judgment as to the issue of liability thereon, and otherwise affirmed, without costs.