[721 NYS2d 625]

GERALD JOHN, Appellant, v FRANKLIN BAHARESTANI, et al., Respondents.

First Department, March 6, 2001

**APPEARANCES OF COUNSEL**

*Lawrence B. Lame* of counsel, New York City (*Jonah Grossman,* attorney), for appellant.

*Joseph J. Andriola* of counsel, New York City (*Marshall, Conway & Wright, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, P. J.

Plaintiff, a laborer at a construction site, sues to recover for personal injuries sustained when he fell some 30 feet from an unprotected and unguarded opening on the third floor of the building under construction, a three-story dwelling. Although it is unquestioned that plaintiff was working at the site at the time, there is a factual dispute as to what precipitated his fall. At issue on this appeal from the denial of his motion for partial summary judgment on liability pursuant to Labor Law § 240 (1) is whether plaintiff is entitled to such relief.

Defendant Franklin Baharestani is the owner of premises located at 85-49 Eliot Avenue in the borough of Queens. Yellowstone Town Houses, Inc., of which Baharestani was the principal, was retained as the general contractor and project manager for the construction of a residential six-unit building at the premises. Yellowstone's responsibilities included overall job safety. On the date of the accident, September 8, 1998, plaintiff was employed by Galway Masonry, Inc., a third-party defendant herein, which was responsible for the erection of the exterior brick walls.

The first two stories of the building had been completed and plaintiff, who had been at the site since April 1998, was working on the third level. A large forklift, which, according to plaintiff, was not functioning properly and could not be moved from its position at the side of the building, was lifting bricks to the third floor. At both the building's second and third floor levels, metal beams protruded through the brick, apparently as support for the floors of balconies that were to be constructed. There was also an opening on the outer wall of each floor near the metal beams that would eventually lead out onto the completed balcony. Permanent flooring covered both the second and third floors. According to plaintiff, boards, 12 feet in length, the functional equivalent of a scaffold, had been placed over the metal beams for workers to walk onto, enabling them to remove the bricks from the forklift and carry them inside the building. No safety device, not even a safety belt, had been provided for this makeshift scaffold.

Plaintiff states that when he arrived for work on the day of the accident, he discovered that the boards covering the metal beams on the third floor had been removed. Since he had to devise some means to reach the forklift in order to unload the distance from one metal beam to the other available, he placed a shorter board he had found over one of the metal beams, resting one end at the opening to the proposed balcony and the

other on a pallet sitting on the forklift. According to plaintiff, at around 11:30 that morning, he made two uneventful trips carrying bricks from the forklift into the building. On the next trip, after taking two or three steps to return to the forklift, he fell to the ground 30 feet below, taking the plank with him and sustaining the complained-of injuries. Plaintiff is unable to say whether the plank broke or moved.

Based on the foregoing account of the accident, plaintiff moved for partial summary judgment on liability, alleging a violation of Labor Law § 240 (1). In opposition, defendants submitted an affidavit from Ronald Gardiner, Galway's president, and the transcript of his deposition, taken after the service of plaintiff's summary judgment motion. Gardiner stated that he never saw any boards placed across the balcony beams. According to Gardiner, the forklift platform was about six inches from the side of the building and he, himself, operating the forklift, would step out onto the forklift platform, a wooden pallet, and pass the materials to his workers inside the building.

On the morning of the accident, Gardiner had raised the forklift to the third floor with a load of about 50 bricks from the day before that he himself had intended to unload. As he was speaking with a carpenter in another area of the construction site, plaintiff and another laborer walked over to the third floor alongside the forklift to see what work remained to be done. Gardiner, who did not witness plaintiff's fall, heard a crash and immediately went to the ground level where he saw plaintiff lying with a wooden plank beneath him. According to Gardiner, plaintiff lost his balance and fell as he was attempting to throw a plank through the balcony door opening onto the four-by-four-foot brick-laden pallet sitting on the forklift "to make the wood pallet wider."

Based upon Gardiner's testimony, defendants argued that disputed issues of fact, which, if decided against plaintiff, would take his claim out of the purview of Labor Law § 240 (1), precluded the grant of summary judgment. Based on Gardiner's account, they argued, plaintiff's work involved moving materials from one location to another on the same floor, not from one floor to another. Thus, they maintained, although plaintiff worked at an elevated level, his work did not involve a height-related risk. Moreover, they claimed, according to Gardiner's version, plaintiff, at the time of his fall, was standing on a permanent floor, not the functional equivalent of a scaffold.

Noting the sharp divergence in the respective accounts of what occurred, the IAS Court denied plaintiff's motion. It found

a question of section 240 (1) coverage due to the conflicting versions of what caused plaintiff to fall and accepted defendants' argument that, should their version prevail, the permanency of the floor from which plaintiff fell would remove the case from the ambit of Labor Law § 240 (1). We reverse.

While plaintiff argues, somewhat persuasively, that Gardiner's account of the accident is incredible as a matter of law,[1] this is an issue we need not reach since, even under Gardiner's version, plaintiff is entitled to the protections of Labor Law § 240 (1)[2] as a matter of law, given that he was injured while engaged in construction work at a construction site when he fell through an unprotected and unguarded opening in the wall to the ground three stories below. It is conceded that other than a pair of gloves, plaintiff was not provided with any safety equipment whatsoever.

As has been often stated, the purpose of Labor Law § 240 (1) is to protect workers by placing responsibility for safety practices at construction sites on owners and general contractors, "those best suited to bear that responsibility" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500) instead of on the workers, who are not in a position to protect themselves. (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520.) "[S]ection 240 (1) imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty which has proximately caused injury [citation omitted]. The duty imposed is 'nondelegable and * * * an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control' [citations omitted]." (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559, quoting *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513; *see also, Amato v State of New York*, 241 AD2d 400, 401, *lv denied* 91 NY2d 805.)

The list of safety devices enumerated in Labor Law § 240 (1) refers to tasks that "entail a significant risk inherent in the

---

1. Gardiner fails even to reveal the source of his knowledge of the details of the accident, although it is rife with the implausible suggestion that the account came from plaintiff, himself.

2. Labor Law § 240 (1), in pertinent part, provides as follows: "All contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

particular task because of the relative elevation at which the task must be performed or at which materials or loads must be positioned or secured. The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured." (*Rocovich v Consolidated Edison Co.*, *supra*, 78 NY2d, at 514.) In *Ross v Curtis-Palmer Hydro-Elec. Co.* (*supra*, 81 NY2d, at 501), the Court of Appeals further explained that the contemplated hazards referred to in *Rocovich* did not include any and all perils that may be connected tangentially to the effects of gravity, but rather were limited to specific gravity-related accidents, like someone falling from a height or being struck by a falling object. "Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold * * * or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person." (*Id.* [emphasis omitted].)

Under plaintiff's account, he walked onto a makeshift scaffold three stories high at a construction site to unload bricks from a forklift when he fell 30 feet to the ground below. While he was not sure whether the wooden plank broke or moved, it is undisputed that there were no safety devices or belts on either the plank or the pallet. His proof thus shows that the makeshift scaffold failed to provide proper protection in violation of Labor Law § 240 (1).

On the other hand, according to Gardiner, plaintiff, in trying to throw a plank onto the forklift, lost his balance and fell three stories to the ground. Even if this version were to be credited, defendants would still be liable under Labor Law § 240 (1) because plaintiff's injuries arose out of a fall from an unprotected and unguarded opening in the building. The protections of Labor Law § 240 (1) attach in such circumstances. (*See, Negroni v East 67th St. Owners*, 249 AD2d 79.) Further, it is undisputed that there were no safety harnesses or other devices at the third-floor balcony opening for plaintiff's use.

Thus, the fact that the parties offered different versions of plaintiff's accident makes no difference with respect to defendants' liability under Labor Law § 240 (1). Under either version, defendants have failed to secure an area at a construction site from which a fall could occur, thereby exposing the injured worker to an elevation-related risk. (*See, Schultze v 585 W. 214th St. Owners Corp.*, 228 AD2d 381; *Fuller v Catalfamo*, 223 AD2d 850, 851.)

Besides attempting to raise an issue of fact as to the happening of the accident, defendants, in an argument accepted by the IAS Court, argue that, if, at the time of his fall, plaintiff were standing on permanent flooring, he would not be entitled to the protections of Labor Law § 240 (1). This argument lacks merit. Addressing this issue in *Carpio v Tishman Constr. Corp.* (240 AD2d 234, 235-236) this Court stated:

"The dissent correctly notes that Labor Law § 240 (1) does not apply merely because work is performed at elevated heights, but rather, applies only where the work itself involves risks related to differences in elevation [citation omitted]. However, it misapplies this principle in concluding that no elevation-related risk existed because the plaintiff was working on a 'permanent concrete floor,' and that this accident was no different from a situation where the plaintiff tripped on a pothole on the ground floor. Indeed, it is the risk posed by elevation differentials at a construction site, not the permanency of the structure, which is determinative of the statute's applicability [citation omitted]."

Similarly, in *Richardson v Matarese* (206 AD2d 353), the Second Department held: "The collapse of the floor constituted a prima facie violation of Labor Law § 240 (1) [citations omitted]. We find no merit to the defendants' contentions that Labor Law § 240 (1) is not implicated because the plaintiffs were injured as the result of the collapse of a permanent, rather than a temporary structure [citations omitted]." (*Id.*, at 353-354.)

Thus, whatever version of the accident is accepted, that plaintiff fell through an unguarded opening, i.e., the doorway to the balcony to be constructed, or from the functional equivalent of a scaffold, i.e., the board placed atop the metal beam that was to support such balcony, which lacked a safety line or other safety device, plaintiff is entitled to summary judgment on liability under Labor Law § 240 (1).

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered on or about May 10, 2000, denying plaintiff's motion for partial summary judgment on the issue of liability under Labor Law § 240 (1), should be reversed, on the law, without costs or disbursements, and the motion granted.

ROSENBERGER, TOM, ELLERIN and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered on or about May 10, 2000, reversed, on the law, without costs or disbursements, and plaintiff's motion for partial summary judgment on the issue of liability under Labor Law § 240 (1) granted.