■ FABIO CORDEIRO et al., Respondents, v SHALCO INVESTMENTS et al., Respondents, and HICKSVILLE PAVING, INC., Appellant, et al., Defendants. [747 NYS2d 194]

On December 7, 1998, Fabio Cordeiro (plaintiff) began working on a garage renovation project, in which his job was to chip concrete off of exposed and elevated steel beams. On December 8, 1998, plaintiff was injured when he fell from one of the beams, on which he had been positioned, onto the concrete floor below. Plaintiff, in the affidavit he submitted in support of his summary judgment motion, averred that he had been directed by "the senior employee" at the worksite to mount the beam by climbing a ladder, that he had not been provided with "any other means of gaining access to the elevated beam," and that he had not been provided with any safety devices to prevent or arrest a fall. Plaintiff admitted at his deposition, however, that, on the day before the accident, he had used a "lift machine" to gain access to the beam on which he was working. Plaintiff also maintained that he had been engaged in work at the time of his fall, and had lost his balance when he turned upon hearing someone call his name.

In opposition to plaintiff's summary judgment motion, defendant-appellant Hicksville Paving, Inc. (Hicksville) submitted the affidavit of its employee Eugene "Buddy" Wright, plaintiff's coworker on the day of the accident, who stated that he and plaintiff had been provided with a "motorized scaffold" from which all sections of the beam could be reached. According to Wright, therefore, plaintiff had no reason to mount the beam, and he was never ordered to climb onto the beam. Wright further averred that plaintiff "had been joking around that day [of the accident] and had been dancing and fooling around on the beams." Wright, who was out of the garage at the time of the accident, stated that plaintiff had told him that "he [plaintiff] was trying to walk from one side of the garage to the other on the beam," rather than working, when he fell, meaning that plaintiff had been using the beam as a shortcut out of the garage instead of climbing down from it and walking up the exit ramp. Another Hicksville employee, Richard Tonon, submitted an affidavit attesting that the "man lift" Hicksville provided for the job "could be made to go vertically up and down and move to different locations as the job required," and that "[t]he work platform for the man lift had a guard rail" to prevent falls during use. Tonon also averred that there was no

need for plaintiff to attempt to walk over the beam to leave the garage, since "non-elevated walkways" were present. Tonon gave testimony to similar effect at his deposition, which was also submitted in opposition to plaintiff's summary judgment motion.

The evidence presented by Hicksville was sufficient to raise an issue of fact as to whether plaintiff is entitled to prevail on his Labor Law § 240 (1) cause of action. Since plaintiff, by his own account, had climbed up a ladder to mount the beam, he could easily have climbed down the same ladder to dismount the beam and then safely walked up the exit ramp out of the garage. Instead, according to plaintiff's alleged admission to Wright, plaintiff was needlessly using the beam as a shortcut out of the garage when he fell. If this is what plaintiff in fact did, the walk on the beam that resulted in his fall was a voluntary detour that did not serve any work-related purpose (*cf., Hagins v State of New York*, 81 NY2d 921, 922-923 [affirming summary judgment as to statutory liability where claimant fell while walking on unfinished abutment wall, contrary to his employer's instructions, but while carrying piece of lumber he had been directed to retrieve for the job]). Thus, although the motion court correctly dismissed Hicksville's recalcitrant worker defense (which disposition Hicksville does not challenge on appeal), defendants may be able to establish at trial that plaintiff's injuries were proximately caused solely by his own actions, not by any failure of defendants to provide adequate safety devices (*see, Weininger v Hagedorn & Co.*, 91 NY2d 958, 960 [directed verdict for plaintiff on issue of liability under Labor Law § 240 (1) was error where "a reasonable jury could have concluded that plaintiff's actions were the sole proximate cause of his injuries"]).

As this Court has previously stated, "[i]n order to impose absolute liability on a building owner, the injured party must prove a violation of Labor Law § 240 (1) *and* that said violation was the proximate cause of the injuries" (*Zeitner v Herbmax Sharon Assoc.*, 194 AD2d 414, 414 [emphasis in original], citing *Smith v Hooker Chems. & Plastics Corp.*, 89 AD2d 361, *appeal dismissed* 58 NY2d 824). Contrary to the dissent's view, Hicksville has not raised an issue of plaintiff's possible negligence in the performance of his work (which would not, of course, ameliorate any statutory liability), but an issue of whether the Labor Law § 240 (1) violation had any causal nexus to plaintiff's injuries. Stated otherwise, while defendants were obligated by the statute to protect plaintiff from elevation-related risks while he was on the beam doing his job, or climb-

ing onto or off of the beam in connection with his work, they had no duty under the statute to protect plaintiff from the additional risks he incurred by walking on the beam when his presence on the beam had no work-related purpose.

As to Hicksville, plaintiff should have been denied summary judgment on the additional ground that Hicksville raised an issue of fact as to whether it was plaintiff's employer on the day of the accident, which, if proven, would bar plaintiff's causes of action against Hicksville under the Workers' Compensation Law. Plaintiff, who obtained his employment by showing up at a "shape-up" yard, claims that he was not employed by Hicksville, but by another company, Carlo Lizza & Sons Paving, Inc. (Lizza). Although plaintiff submitted a pay stub from Lizza showing 40 hours of work during the period from December 2 through 8, 1998, Hicksville submitted sufficient evidence to defeat summary judgment on this issue. Plaintiff's coworker, Wright, stated in his affidavit that both he and plaintiff were employees of Hicksville when they were working on this job. In addition, Tonon, Hicksville's job supervisor, stated in his affidavit that Hicksville had been the contractor for the job on which plaintiff was employed, and had not subcontracted any portion of the work for the job to Lizza. Tonon further averred that, to his knowledge, Lizza had not been doing any work on this job in any way.

The affidavits of Wright and Tonon, in combination with plaintiff's deposition testimony that Wright was the only person who gave him instructions for this job and that there was no one other than Wright present at the work site whom plaintiff believed to be a Lizza employee, raised a triable issue at least as to whether plaintiff was a special employee of Hicksville, which would be sufficient to make the bar of the Workers' Compensation Law applicable (*see, Walls v Krasdale Foods*, 266 AD2d 5, citing *Thompson v Grumman Aerospace Corp.*, 78 NY2d 553). Thus, plaintiff was not entitled to summary judgment on the issue of whether Hicksville was his employer, without regard to the purported documentary evidence of Hicksville's status as plaintiff's employer that it submitted, i.e., Hicksville's 1998 W-2 form for plaintiff and its Workers' Compensation Board accident report, both of which were created after the accident. We observe that the assertion of plaintiff's counsel that the Workers' Compensation Board has determined that plaintiff was employed by Lizza is entitled to no weight, as it is not supported by any corroborating documentation. Concur—Tom, J.P., Sullivan and Friedman, JJ.

Rosenberger, J., dissents in a memorandum as follows: The complaint in this action asserts common-law negligence claims and claims under New York State Labor Law §§ 200, 240 (1) and § 241 (6) for injuries suffered by plaintiff Fabio Cordeiro on December 8, 1998, when he fell from a steel beam while working at a construction site on Long Island. The complaint alleges, inter alia, that defendants Shalco Investments, Shalco Investments II, United Capital Corp., Repad Management, AFP Fifteen Corp., and AFP 9 Corp. were the owners and/or managers of a parking garage at 11 Grace Avenue in Great Neck where plaintiff was injured, and that defendant Hicksville Paving, Inc. (Hicksville) was a contractor retained by the owners to perform certain renovation work to the garage. The complaint also alleges that, on the date of the accident, plaintiff was employed by Carlo Lizza & Sons Paving, Inc. (Lizza), a paving company that shares the same business address as Hicksville.

Plaintiff moved against all defendants for partial summary judgment on liability under his Labor Law § 240 (1) claim. In support of the motion, plaintiff submitted, inter alia, transcripts of his own deposition testimony and that of Hicksville's supervisor, Richard Tonon, as well as copies of pay stubs from Lizza, for the period November 4, 1998, through the date of the accident, December 8, 1998, and a letter from the Secretary-Treasurer of his union, confirming that plaintiff had been employed by Lizza on December 8, 1998.

In opposing plaintiff's motion, Hicksville submitted affidavits by Richard Tonon, the Hicksville employee assigned to supervise the renovation work on the garage, and Eugene "Buddy" Wright, who was working with plaintiff on the day before and the day of the accident; a W-2 statement from Hicksville indicating that Hicksville paid plaintiff $396.32 in wages during 1998; a hospital form showing plaintiff's admission on January 6, 1999, and listing Hicksville as plaintiff's employer; and an unauthenticated "Employer's Report of Work-Related Accident" form filled in by Hicksville.

According to plaintiff's uncontroverted deposition testimony, plaintiff had worked for Lizza at different construction sites for approximately two months before the accident. On Monday, December 7, 1998, the day before his accident, he went to the "yard" where construction work was assigned. Plaintiff was assigned by someone named "Anthony" to work at the Grace Avenue garage. He went to the garage with another worker named Eugene "Buddy" Wright, who instructed him as to what they were to do, which consisted primarily of chipping and

cleaning old concrete from steel beams exposed by the removal of the concrete deck that had served as the floor of the upper parking level and the ceiling of the lower parking level. The beams were approximately 12 to 13 feet above the floor. On Monday, plaintiff and Wright, standing atop the beams or reaching them from below by means of a ladder and an electric lift, which rose approximately four to five feet, chipped concrete from the beams. They worked without incident that day.

Plaintiff reported to the garage again on Tuesday, December 8, 1998, where he again met Wright, who instructed him to continue cleaning concrete from the steel beams and then left the garage to wait outside for a delivery. Plaintiff, who was alone in the garage, used a ladder to climb up to and mount the beam that he was to clean. The lift machine was not in the area where plaintiff was working nor was there any scaffolding or other safety device at plaintiff's work site. A short time later, plaintiff fell from the beam to the concrete floor below, incurring serious and lasting injuries. These facts are not in dispute.

Plaintiff testified that he fell when he turned and lost his balance in response to someone—he believed it was Wright—calling his name while he was standing on the beam chipping away at concrete. Hicksville, by way of Wright's affidavit, offered a slightly different version of plaintiff's fall. According to the Wright affidavit, Wright was outside when plaintiff fell and came into the garage when he heard a scream to find plaintiff on the floor. Wright, who concededly did not witness plaintiff's fall, asserts that plaintiff told him (when, he does not say) that "he [plaintiff] was trying to walk from one side of the garage to the other on the beam and fell from it." Richard Tonon, the Hicksville supervisor assigned to supervise the renovation work at the garage, testified that he was not present at the garage when the accident occurred but that Wright told him that plaintiff fell while walking on the beam.

On appeal, Hicksville contends that there are disputed issues of fact regarding how the accident occurred and who plaintiff's employer was on the date of the accident, and that these factual disputes rendered entry of summary judgment for plaintiffs inappropriate.

Section 240 (1) of the Labor Law, known as the "Scaffolding Law," is intended to maximize the protections that will be afforded to workers who are subjected to elevation-related hazards at the job site (*see, Correia v Professional Data Mgt.*, 259 AD2d 60, 63), and to place the ultimate responsibility for workplace safety on owners and general contractors, rather

than on workers themselves (*see, Gordon v Eastern Ry. Supply*, 82 NY2d 555, 560; *John v Baharestani*, 281 AD2d 114, 117). It is to be construed as liberally as necessary to accomplish the purposes for which it was enacted (*see, e.g., Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513; *Kyle v City of New York*, 268 AD2d 192, 195). Section 240 (1) applies to injuries that are occasioned by falls from ladders, scaffolding, or, as here, from unprotected, unguarded structural beams (*see, e.g., John v Baharestani*, 281 AD2d 114, *supra*).

Accordingly, the statute imposes a nondelegable obligation on owners, contractors, and their agents to provide adequate safety devices to protect against height-related injuries and absolute liability on those same parties for any breach of that obligation that proximately causes a worker's injury (*John v Baharestani*, 281 AD2d 114, 117, *supra*, and cases cited therein.) The failure to provide any safety measures constitutes a per se violation of the statute and subjects owners and contractors to absolute liability as a matter of law for any injuries that result from such failure, without regard to the violators' care or lack of care (*see, Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 521). Furthermore, the existence of safety devices somewhere on the construction site is insufficient to meet the obligation imposed by the statute (*see, id.* at 524; *Laquidara v HRH Constr. Corp.*, 283 AD2d 169). It is the responsibility of the contractor and owner—not the individual worker—to provide and "place" appropriate safety devices at the particular work site so "as to give proper protection to a person so employed" (Labor Law § 240 [1]).

The sole exception to this imposition of absolute liability arises when the defendant is able to establish that the injured worker deliberately refused to use appropriate safety devices that he was specifically instructed to use and that were specifically available to him. Success on this "recalcitrant worker" defense requires a showing that the safety device in question was available and visible at the immediate work site of the injured employee, that the employee was directed to use the device, and that the employee deliberately refused to use it (*see, Kaffke v New York State Elec. & Gas Corp.*, 257 AD2d 840; *see also, Gordon v Eastern Ry. Supply*, 82 NY2d 555, 563; *Tennant v Curcio*, 237 AD2d 733; *Watso v Metropolitan Life Ins. Co.*, 228 AD2d 883; *Jastrzebski v North Shore School Dist.*, 223 AD2d 677, *affd* 88 NY2d 946; *Hall v Cornell Univ.*, 205 AD2d 872). Thus, this defense is not established merely by showing that the worker failed to comply with an employer's instruction to avoid using unsafe equipment or engaging in

unsafe practices, or to use a particular safety device (*see, Gordon v Eastern Ry. Supply*, 82 NY2d 555, 563, *supra; Stolt v General Foods Corp.*, 81 NY2d 918, 920; *Hagins v State of New York*, 81 NY2d 921, 922; *Tennant v Curcio*, 237 AD2d 733, 734, *supra; Fichter v Smith*, 259 AD2d 1023, *lv dismissed in part and denied in part* 93 NY2d 994), and " 'the mere presence of safety devices at the worksite does not diminish [a] defendant's liability' " (*Hall v Cornell Univ.*, 205 AD2d 872, 874, *supra*, quoting *Neville v Deters*, 175 AD2d 597).

To establish entitlement to summary judgment on a Labor Law § 240 (1) claim, a plaintiff must demonstrate by admissible evidence that the statute was violated and that such violation was a proximate cause of his injuries (*Kyle v City of New York*, 268 AD2d 192, 196, *supra; see also, Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 524, *supra* ["where there is no view of the evidence at trial to support a finding that the absence of safety devices was not *a* proximate cause of the injuries, the court may properly direct a verdict in the plaintiff's favor" (emphasis added)]).

Once the movant has produced evidence demonstrating his entitlement to judgment as a matter of law, it is incumbent on the opponent to produce sufficient evidence—also in admissible form—demonstrating the existence of disputed issues of material fact requiring a trial (*Zuckerman v City of New York*, 49 NY2d 557, 562).

Applying the foregoing principles to the present case confirms that Supreme Court properly granted plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) claim. It is undisputed that plaintiff was injured when he fell from a beam approximately 13 feet above the ground at his work site— precisely the type of hazard that section 240 (1) was intended to address (*see, Hagins v State of New York*, 81 NY2d 921, 922, *supra; John v Baharestani*, 281 AD2d 114, 117, *supra; Kyle v City of New York*, 268 AD2d 192, 196, *supra; McGurk v Turner Constr. Co.*, 127 AD2d 526, 528-529). It is also undisputed that on the date of the accident, plaintiff was provided with *no* safety devices whatsoever that would serve to protect him from a fall from the overhead beam he was assigned to clean. Such failure constitutes a per se violation of section 240 (1) that subjects defendants to absolute liability (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 524, *supra*). The fact that a lift machine (which may or may not have been an ade-

quate safety device)* was located somewhere else on the job site when plaintiff was injured provides no protection from liability for defendants (see, e.g., *Hall v Cornell Univ.*, 205 AD2d 872, *supra*).

Hicksville's attempt to avoid summary judgment through the creation of a factual dispute as to how the accident occurred is unavailing. As we held in *John v Baharestani* (281 AD2d 114, 118, *supra*), defendant's differing version of how the accident happened will not defeat plaintiff's motion for summary judgment when section 240 (1) liability will attach under either plaintiff's or defendant's account.

*Hagins v State of New York* (81 NY2d 921, 922, *supra*) informs our decision that plaintiff is entitled to the protections of section 240 (1) regardless of whether he fell while he was chipping concrete while standing atop the beam or, as Hicksville contends, while he was walking on the beam to get from one part of the work site to the other. In *Hagins*, the defendant made the same argument that Hicksville makes here, i.e., that it should not be liable under section 240 (1) because, when the accident occurred, plaintiff was not working on the elevated abutment from which he fell but, rather, using it as a passageway from one part of the work site to another. Indeed, there was evidence in that case that the plaintiff used the abutment as a walkway in contravention of repeated instructions not to do so. Nonetheless, the Court held that the defendant could not "rely on claimant's own negligence in using an unsafe route to cross the road as a 'supervening cause' of his injuries, since the accident was plainly the direct result of the failure to supply guardrails or other appropriate safety devices" (*id.* at 923; *see also, Stolt v General Foods Corp.*, 81 NY2d 918, 920, *supra*). By the same token, defendant here cannot avoid summary judgment on the section 240 (1) claim based on its assertion that plaintiff was using the unprotected beam as a passageway since Hicksville's failure to provide any safety devices to protect against such falls was at least *a* proximate cause of plaintiff's injuries (*see also, John v Baharestani*, 281 AD2d 114, 117, *supra*; *Laquidara v HRH Constr. Corp.*, 283 AD2d 169, *supra*; *Kyle v City of New York*, 268 AD2d 192, 196, *supra* ["liability imposed under Labor Law § 240 (1) is absolute,

---

* It is undisputed that the lift machine was not at the site where plaintiff was working on the date of the accident. In addition, it is questionable as to whether the lift machine, which, according to undisputed testimony, lifted a worker four to five feet above the ground, would permit a 5 foot, 7 inch worker, such as plaintiff, to have sufficient leverage to chip concrete off the top of a beam that was between 9 and 13 feet above the ground.

rendering any alleged negligence on the part of the plaintiff irrelevant"]; *McGurk v Turner Constr. Co.*, 127 AD2d 526, 528-529, *supra*).

Hicksville also asserted, as an affirmative defense, that plaintiff was employed by Hicksville, not by Lizza, on the date of the accident, and that, therefore, Hicksville is exempt from liability under section 240 (1) by virtue of the New York Workers' Compensation Law. As proof, Hicksville submitted a copy of a W-2 form showing that Hicksville paid plaintiff a total of $396.32 during the course of 1998; a copy of an unsigned form entitled "Employer's Report of Work-Related Accident," completed sometime after the accident, and a hospital admission form dated January 6, 1999, which lists plaintiff as the admitted patient and Hicksville as his employer. In rebuttal, plaintiff submitted a pay stub, issued by Lizza, showing that he was paid for 40 regular (not overtime) hours during the seven-day period from December 2, 1998 to December 8, 1998—the date of the accident. The record establishes that plaintiff received workers' compensation benefits, but neither Hicksville nor plaintiff submitted any evidence of the worker's compensation award itself.

Hicksville had the burden of proving facts to support its workers' compensation defense. However, none of the evidence submitted by Hicksville establishes that plaintiff was employed by Hicksville on December 8, 1998. The W-2 form demonstrates, at most, that Hicksville paid plaintiff $396.32 in wages for work performed sometime during 1998. The self-serving "Employer's Report of Work-Related Accident," which was completed by Hicksville sometime after the accident, is insufficient to overcome the Lizza pay stub, which at least establishes that plaintiff was paid by Lizza for hours of work on the day of the accident. And the January 6, 1999, hospital admission form clearly does not establish that Hicksville was plaintiff's employer on December 8, 1998, or on any other date in 1998.

Because plaintiff met his burden of establishing his entitlement to summary judgment on his Labor Law § 240 (1) claim and Hicksville failed to produce sufficient evidence, in admissible form, demonstrating the existence of disputed issues of fact, either with respect to plaintiff's claim or its affirmative defense, Supreme Court properly granted plaintiff's summary judgment motion.