Martin v Niagara Falls Bridge Commn. (2018 NY Slip Op 04452)





Martin v Niagara Falls Bridge Commn.


2018 NY Slip Op 04452


Decided on June 15, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 15, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, DEJOSEPH, NEMOYER, AND WINSLOW, JJ.


62 CA 17-01122

[*1]ELDRED JAY MARTIN, PLAINTIFF-APPELLANT,
v
NIAGARA FALLS BRIDGE COMMISSION, DEFENDANT-RESPONDENT. 
NIAGARA FALLS BRIDGE COMMISSION, THIRD-PARTY PLAINTIFF, 
v
LIBERTY MAINTENANCE, INC., THIRD-PARTY DEFENDANT-RESPONDENT.






LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (JOHN A. COLLINS OF COUNSEL), AND THE LAW OFFICE OF CHRISTOPHER C. KERR, ORCHARD PARK, FOR PLAINTIFF-APPELLANT.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, NEW YORK CITY (PATRICK J. LAWLESS OF COUNSEL), FOR DEFENDANT-RESPONDENT.
WALSH, ROBERTS & GRACE, BUFFALO (MARK P. DELLA POSTA OF COUNSEL), FOR THIRD-PARTY DEFENDANT-RESPONDENT. 


 Appeal from an order of the Supreme Court, Niagara County (Frank Caruso, J.), entered August 24, 2016. The order, among other things, granted the motions of defendant and third-party defendant for summary judgment dismissing the complaint. 
It is hereby ORDERED that the order so appealed from is modified on the law by denying in part the motions of defendant and third-party defendant and reinstating the Labor Law § 240 (1) claim, and as modified the order is affirmed without costs.
Memorandum: Plaintiff commenced this action seeking to recover damages under, inter alia, Labor Law §§ 240 (1) and 241 (6) for injuries that he sustained when the bridge scaffolding sheet that he was detaching from underlying support cables tipped, causing him to fall approximately 25 to 30 feet before landing on a steel box beam. Plaintiff appeals from an order that granted the motion of third-party defendant, plaintiff's employer, for summary judgment dismissing the Labor Law §§ 240 (1) and 241 (6) claims and the motion of defendant, the property owner (defendants), for, as relevant to this appeal, summary judgment dismissing the complaint. We agree with plaintiff that Supreme Court erred in granting the motions with respect to the Labor Law § 240 (1) claim, and we therefore modify the order accordingly.
Labor Law § 240 (1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed," i.e., the protection of workers by placing the ultimate responsibility for safety practices at building construction sites on the owner and general contractor (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991] [internal quotation marks omitted]). "A violation occurs where a scaffold or elevated platform is inadequate in and of itself to protect workers against the elevation-related hazards encountered while assembling or dismantling that device, and it is the only safety device supplied or any additional safety device is also inadequate" (Cody v State of New York, 52 AD3d 930, 931 [3d Dept 2008]; see Calderon v Walgreen Co., 72 AD3d 1532, 1533 [4th Dept 2010], appeal dismissed 15 NY3d 900 [2010]).
We conclude that defendants' own submissions raised triable issues of fact with respect to the Labor Law § 240 (1) claim. In support of their contentions that plaintiff's conduct was the sole proximate cause of his injuries, defendants submitted plaintiff's deposition testimony in which he testified that he chose to unhook his safety lanyard and detach the bridge scaffolding sheet without the benefit of the lanyard or other safety device. The six-foot lanyard given to him was not an adequate safety device, however, because plaintiff also testified that it was too short to permit plaintiff to reach the final clip anchoring the bridge scaffolding sheet, even if he had moved the fall arrest system cable to a location closer to that clip. Furthermore, although defendants submitted evidence that other safety devices were generally available on the work site, they failed to establish as a matter of law that an adequate safety device was present that would have prevented plaintiff "from harm directly flowing from the application of the force of gravity to . . . [his] person" (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993] [emphasis omitted]). For example, defendants failed to establish as a matter of law that a 20- or 25-foot lanyard, which appears to have been the next length available on the work site, would have prevented plaintiff's fall by virtue of the fact that it was retractable. It therefore cannot be concluded on this record that plaintiff's use of that alternative lanyard would have made any substantial difference in plaintiff's injuries (see generally Kyle v City of New York, 268 AD2d 192, 198 [1st Dept 2000], lv denied 97 NY2d 608 [2002]). Moreover, contrary to the dissent's characterization of the facts of this case, plaintiff further testified that his on-site supervisor pushed him to hurry and, although there was purportedly a rule that the workers on the bridge scaffolding platform were required to be tied off 100 percent of the time, "[n]obody follow[ed] it." Thus, although we agree with defendants that the opinions of plaintiff's expert are speculative (see Robinson v Barone, 48 AD3d 1179, 1180 [4th Dept 2008]), there is nonetheless a triable issue of fact whether adequate safety devices were readily available that plaintiff knew that he was expected to use "but for no good reason chose not to do so, causing an accident" (Gallagher v New York Post, 14 NY3d 83, 88 [2010]; see Robinson v East Med. Ctr., LP, 6 NY3d 550, 555 [2006]).
We reject plaintiff's further contention that the court erred in granting defendants' motions with respect to the Labor Law § 241 (6) claim. Plaintiff contends that there is a question of fact whether there was a violation of 12 NYCRR 23-5.1 (c) (2), which states that "[e]very scaffold shall be provided with adequate horizontal and diagonal bracing to prevent any lateral movement." Although we agree with plaintiff that he could rely on that provision for the first time in opposition to defendants' motions because his "reliance thereon raises no new factual allegations or theories of liability and results in no discernable prejudice to [defendants]' " (Smith v Nestle Purina Petcare Co., 105 AD3d 1384, 1386 [4th Dept 2013]), we nonetheless conclude that the court properly determined that it would be "impractical and contrary to the very work at hand" to apply that regulation to a scaffold that is in the process of being dismantled (Salazar v Novalex Contr. Corp., 18 NY3d 134, 140 [2011]).
All concur except Nemoyer and Winslow, JJ., who dissent and vote to dissent in part and vote to affirm in the following memorandum: We dissent in part and would affirm the order in its entirety, inasmuch as we respectfully disagree with the majority's determination that Supreme Court erred in granting those parts of the motions of defendant and third-party defendant, Liberty Maintenance, Inc. (Liberty) (collectively, defendants), for summary judgment dismissing plaintiff's claim under Labor Law § 240 (1). There can be no liability under that section where a plaintiff's actions are the sole proximate cause of his or her injuries (see Blake v Neighborhood Hous. Servs. of N.Y. City, Inc., 1 NY3d 280, 290 [2003]; see also Robinson v East Med. Ctr., LP, 6 NY3d 550, 554 [2006]; Montgomery v Federal Express Corp., 4 NY3d 805, 806 [2005]), and we conclude that defendants established as a matter of law that "plaintiff had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured" (Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 40 [2004]).
Plaintiff was dismantling an access platform below a bridge deck when he disconnected his safety lanyard from the fall arrest system to remove a deck clip that was beyond his reach, and then fell 25 to 30 feet onto a steel box beam. The platform that plaintiff was disassembling was made up of rows of corrugated metal sheets that were lying on wire cables. Each 3-foot by 10-foot metal sheet overlapped with its neighboring sheets, and was clipped to the cables below through six pre-drilled holes. The metal sheets that made up the platform necessarily became [*2]unstable as the platform was being disassembled, and Liberty, plaintiff's employer, had a policy that the workers on the platform were required to be tied off 100 percent of the time. To that end, Liberty provided a variety of safety devices for plaintiff's use, including harnesses, lanyards, retractable lanyards, ropes, rope grabs, "choker[s]" and fall arrest cables. The safety equipment was kept in a trailer on the work site and was available to the workers and, as the foreperson, plaintiff was responsible for the safety of all workers.
The evidence submitted by defendants in support of their respective motions established that, prior to plaintiff's fall, he had intentionally disconnected himself from the fall arrest system by unhooking a six-foot "bungee cord lanyard" from his safety harness so that he could move into the opening between a 45-degree beam and a 90-degree beam and remove a deck clip that was "a couple feet" beyond his reach. Plaintiff testified at his deposition that, although he could have moved the fall arrest cable closer to the opening, the six-foot lanyard was still too short to permit him to reach the last deck clip. Plaintiff further testified, however, that he could have performed that task while connected to the fall arrest system by placing a choker around the 45-degree beam right next to where he was working and then attaching the six-foot lanyard to the choker, but he did not do so because he was "[a]lways in a hurry." Plaintiff also testified that, in the alternative, he could have obtained from the trailer a retractable lanyard that had a maximum extension of 20 feet or 90 feet in order to complete his task, but he did not do so because he was in a hurry. Thus, plaintiff's deposition testimony established that he knew that there were retractable lanyards and choker cables available for his use and that he chose for no good reason not to use them. We therefore disagree with the majority's determination that there is a question of fact whether adequate safety devices were available.
Furthermore, when plaintiff unclipped his lanyard, he had already removed the overlapping metal sheet that was on the other side of the beam, and the vertical "tie ups," which had previously provided "some stability to the platform" by preventing the metal sheets from "sagging," had also been removed. Notwithstanding plaintiff's awareness that there would be nothing holding the metal sheet onto the cables once the last deck clip was removed, and despite the fact that Liberty had provided 20-foot retractable lanyards and chokers for plaintiff's use, either of which would have enabled him to reach the deck clip while remaining tied off, plaintiff "chose for no good reason not to" use the adequate safety devices that were available for his protection (Cahill, 4 NY3d at 40; see Piotrowski v McGuire Manor, Inc., 117 AD3d 1390, 1390-1391 [4th Dept 2014]), because he was in a hurry and wanted to complete his task more quickly (see generally Christiano v Random House, Inc., 51 AD3d 579, 580 [1st Dept 2008]). We again note that plaintiff testified at his deposition that, as the foreman on the job site, it was his responsibility to ensure that the workers were "safe while they were up there" and were wearing safety harnesses and lanyards.
We thus conclude that plaintiff's action in unclipping his lanyard so that he could disassemble an unsecured metal sheet in violation of Liberty's 100 percent tie-off policy was the sole proximate cause of his fall, and the court therefore properly granted those parts of defendants' motions for summary judgment dismissing plaintiff's Labor Law § 240 (1) claim.
Entered: June 15, 2018
Mark W. Bennett
Clerk of the Court